### ALBERTZ *v.* BACHE *et al.*

*(Supreme Court, General Term, First Department.   July 18, 1890.)*

MASTER AND SERVANT—NEGLIGENCE OF MASTER.

    Plaintiff, employed by defendants, was sent, on the application of defendants' foreman for more help, to assist in handling cases of glass weighing from 180 to 200 pounds.   The foreman at first refused to set plaintiff at work, on the ground that he was not strong enough, and was inexperienced.   But, on being sent back again by defendants, plaintiff was assigned to the duty of holding some of the glass at an elevated position, and was injured by some of the cases falling upon him.   The

work was dangerous to one without experience, and plaintiff had not been informed of such danger. *Held*, that the question of defendants' negligence should have been left to the jury.

Appeal from circuit court, New York county.

Action by August Albertz against Seman Bache and others. Judgment was given dismissing the complaint, and plaintiff appeals.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*August P. Wagener*, for appellant. *Sol. Kohn*, for respondents.

BRADY, J. The plaintiff was sent by one of the defendants' firm, Mr. Ulman, to assist in handling glass, which was in cases upon the sidewalk, and weighed from 180 to 200 pounds each. He was so sent upon the application for more help by the defendants' foreman, but sent back by the latter because he was only a glass-cutter, not strong enough for the work to be done, and inexperienced at it, but again directed, nevertheless, to go to the foreman, and do what was required by Mr. Ulman. The duty assigned him was to hold at an elevated position the glass, so that other glass, behind that which he held up, could be removed from its place,—could, in other words, be taken out; but in doing it the glasses held by him, which were high, toppled over and upon him, breaking his leg. Experience would have enabled him to hold the glasses, it appears, at such an angle and in such balance as would prevent them from falling over, aside from any superior strength which he might have had; and the foreman seems to have known and appreciated his infirmity. The work, to a person not thus experienced, was dangerous, according to the foreman's statement, but the plaintiff did not know it; no notice to that effect having been given to him. The complaint was nevertheless dismissed. The plaintiff's counsel asked to be allowed to go to the jury on the whole case, "and as to whether the defendants were not negligent in not providing a sufficient number of men to do this work in which the plaintiff was engaged at the time of the accident, and by reason of it the accident occurred; and (6) as to whether the plaintiff had knowledge of the risks of the service in which he was engaged at the time of the accident." All of which was refused. Exceptions were duly taken to these rulings, and the question now presents itself whether any of them was erroneous.

It is clear that whether the defendants had furnished sufficient help to do the work was important, as in the case of *Flike* v. *Railroad Co.*, 53 N. Y. 549, the defendants were held liable for a failure to have the necessary help to accomplish the work in hand with safety. The defendants here sent an incompetent person to assist the workmen engaged in the object to be carried out, and insisted on his doing as directed after notice that he was not acceptable to their foreman. He was not, in other words, fit for the duty. He was thus placed, by the defendants' own act, where, from his own infirmities, he might be injured himself, or be the cause of injury to others. He was not responsible for this, however, not knowing that the work he was to do was dangerous. The rule with regard to dangerous employments imposing its consequences upon the workman who braves them rests upon the knowledge of its existence. *Marsh* v. *Chickering*, 101 N. Y. 399, 5 N. E. Rep. 56; *Sweeney* v. *Envelope Co.*, 101 N. Y. 524, 5 N. E. Rep. 358. And therefore, where he does not know of it, it should not be rigorously or despotically applied. The jury should be called upon, at least, to say whether, if he did not know it, he was chargeable with notice. There are many cases involving an exposition of the duties and obligations of the employer and the employed in the books, and in them can be found phrases covering multitudes of propositions, in the effort to formulate a precise rule of government on trials embracing them; but the facts are so diverse that principles only can be employed for each case, however deftly the facts may be handled. The cases cited, it is thought, establish the principle that, when a fellow-servant is called upon to do dangerous

work, the help should be abundant, and, if he have no knowledge of the hazard to which he is exposed, he should be advised of it, if the employer wish to secure himself from liabilities sustained on account of his omission of duty.   A different rule would encourage a disregard of personal safety, which is sufficiently reckless now, in the dispatch with which all enterprises are marked, and which tend to make us, if not too progressive, at least too precipitate in the consummation of progressive results.   It may be said· here, also, that when the master urged the plaintiff to the work in which he was injured by sending him back, as stated, he relieved him from the responsibility of voluntary action on his part, if that principle can be invoked against him, and contributed to the injury, or assumed the risk.   *Sweeney* v. *Envelope Co.*, above cited; *Kain* v. *Smith*, 89 N. Y. 375; *Hawley* v. *Railway Co.*, 82 N. Y. 370. For these reasons the judgment appealed from should be reversed, and a new trial ordered, with costs to abide the event.   All concur.