MUTUAL LIFE INSURANCE COMPANY OF NEW YORK v. MARION R. JOHNSON.

166 Sou. 442.
Opinion Filed October 11, 1935.
On Rehearing February 28, 1936.
On Further Rehearing March 19, 1936.

568

*Doggett, McCollum, Howell & Doggett,* for Petitioner; *John E. Mathews,* for Respondent.

PER CURIAM.—Certiorari was granted in this case and oral argument heard before Division B of this Court on the return of the writ of certiorari with its accompanying record.

While interesting questions of law have been ably argued at the bar and discussed in the briefs of petitioner, we find a conclusive reason for quashing the writ of certiorari in this case to be the rule, peculiar to certiorari cases, that a Circuit Court's judgment affirming a judgment of the Civil Court of Record may be quashed on certiorari *only* in a case when, considered with reference to the pleadings and record of the Civil Court of Record taken up by means of the appeal to the Circuit Court, it has been made to

appear thereby that the *judgment of affirmance* rendered by the Circuit Court, while sitting as court of primary appellate jurisdiction in the premises, is not in accordance with the essential requirements of the law.

In considering an appellate judgment of the Circuit Court upon certiorari from this Court, the Supreme Court is not permitted to review the *correctness* of the Circuit Judge's ruling on the merits of the appeal as disclosed by the evidence in the Civil Court of Record's bill of exceptions, that is, the Supreme Court is not permitted to reconsider and weigh the effect of such evidence. On certiorari, before the Supreme Court can look into the sufficiency of the evidence, there must be some showing that the Circuit Court adopted and enforced a wrong view of the law in reviewing the case on the evidence and that it applied such wrong rule of law to its own appellate consideration and weighing of the evidence and that the case is one where the legal sufficiency of the evidence to warrant the particular judgment appealed from was appropriately raised and presented on the appeal to the Circuit Court as a ground for reversal. American Ry. Express Co. v. Fegenbush, 107 Fla. 145, 144 Sou. Rep. 320; Ulsch v. Mountain City Mill Co., 103 Fla. 932, 138 Sou. Rep. 483; Brinson v. Therin, 99 Fla. 696, 127 So. 313. No such showing has been made in this case.

Certiorari quashed.

WHITFIELD, C. J., and BROWN, BUFORD, and DAVIS, J. J., concur.

### ON PETITION FOR REHEARING

### Division B.

TERRELL, J.—This case came up by certiorari from a judgment of the Circuit Court of Duval County affirming a judgment of the Civil Court of Record of that county in

favor of respondent. In our former opinion quashing the writ we held "that before this Court would look into the sufficiency of the evidence, there must be some showing that the Circuit Court adopted and enforced a wrong view of the law in reviewing the case on the evidence and that it applied such wrong rule of law to its own appellate consideration and weighing of the evidence and that the case is one where the legal sufficiency of the evidence to warrant the particular judgment appealed from was appropriately raised and presented on the appeal to the Circuit Court as a ground for reversal."

A rehearing and a reargument were granted in which it was fervently urged that the Circuit Court adopted and applied an erroneous rule of law in its review of the case on appeal and having done so there was failure to comply with the essential requirements of law in the entry of the judgment.

Because of the state of the record, the direct issue raised being one of first impression in this Court, and the urgence of counsel, we have made a thorough examination of the cause. It is not without its difficulty but that does not lie in the issue, it arises from the application of the law to the facts adduced in support of the issue. In fine, the case is one of those typical border line cases in which the losing litigant is rarely convinced that the decision reached is justified, regardless of how it falls.

The issue is clear. Respondent was the beneficiary in an accident policy of insurance executed by petitioner in favor of her husband, James R. Johnson. The policy provided "double indemnity" to the beneficiary, upon proof that the death of assured was caused by external, violent, and accidental means inedpendently and exclusively of other causes. Johnson was killed October 17, 1932. The face of the policy

was paid promptly but double indemnity was refused on the contended ground that assured did not come to his death by accidental means.

A common law action was brought by the beneficiary to recover under the double indemnity provision. The declaration relied on and alleged death by accidental means. Pleas denied that the assured came to his death by accidental means and asserted that it was produced by self destruction. Such was the clear issue presented at the trial.

With the issue thus drawn, the burden was on respondent, plaintiff in the action, to prove that death resulted from accidental means. To invoke the presumption of law against suicide in support of this issue some evidence must be introduced consistent with the hypothesis of death by accidental means. The presumption of law against suicide is rebuttal and gives way when the cause of death is known and when the physical fact and circumstances are wholly inconsistent with any theory or hypothesis of death by accidental means. It prevails when the cause of death is unknown.

Petitioner contends that there is a complete absence of any evidence to support death by accidental means, that the physical facts completely rebut the presumption of law against suicide, which has no place in a case like this where the circumstances proven exclude any reasonable hypothesis that insured came to his death by accidental means. It is further contended that the only possible theory under which the presumption against suicide can be invoked in this case is to presume that Johnson's pistol accidentally got in position, that it was accidentally cocked, and that the trigger was accidentally pulled, the effect of which would be to pyramid presumption on presumption which would

amount to the application of a second erroneous rule of law contrary to the settled rule in such cases.

This contention makes it necessary to examine the record for the purpose of ascertaining whether there was any evidence to support the verdict and judgment. The evidence is all circumstantial and much of it is not in dispute. It is shown that the insured was a police officer earning $160.00 per month, he had a wife and four small children, owed very little and had no financial or domestic troubles. On the day he was killed he was off duty because of a boil on his ankle, his wife got his pay check cashed that day and drove him to the doctor to get his foot dressed and early that evening to the filling station to pay a small gas bill. During the day while his wife was down town he ordered and installed a new radio and that night after eating supper as usual he played the radio and nursed or played with one of his children until about 9:00 o'clock. Later he sat in the living room and talked with his wife, "fooled" with his pistol, and told his wife about splitting bullets. He was experienced in the use of firearms, was righthanded, and carried a pistol on duty all the time, which he placed in the drawer or on the mantel when he came home from duty. About 11:00 o'clock insured and his wife went upstairs to go to bed. The insured went to his room to get ready for bed and when last seen alive by the beneficiary a few minutes later he was sitting on the bed, with his feet on the floor, looking at the pistol which was a .38 Smith and Wesson, special, double action, being the size required by the Jacksonville Police Department. The beneficiary went to her room and when she had prepared for bed started to turn out the light in the hall, but before reaching it the pistol fired, she entered the room at once, and found the insured lying on the bed on his right side, his feet hanging

off the bed, his head near the pillow, a bullet had entered his head to the left of the center of his left eye between his eyebrows and the hair line, it had passed through his head, and lodged just under the surface on the opposite side. The pistol was on the bed near the insured who was dead.

As to the foregoing evidence there was no conflict. There was evidence as to powder burns around the wound where the bullet entered the insured's head, as there were on the pillow near his head, and on his right hand between the thumb and the first finger, but this evidence was in hopeless conflict.· It was testified by Dr. Killinger for petitioner that if there were powder burns of the tattoo type around the wound the pistol would have been from four to six inches from the head at the time of discharge, while if the burns consisted in a searing or burning of the flesh the pistol would have been within one or two inches of or pressed against the head at the time of discharge. It is said in cases of self destruction with a firearm if there is a searing or burning of the flesh that fact tends to support suicide, while if the flesh was not burned that fact would point to accidental death.

The evidence of powder marks on the pillow was also in hopeless conflict. Respondent contends that it is not only contradicted by the verbal testimony but is clearly disproved by the physical facts in evidence. The deceased was lying on his right side and by the evidence his head was somewhere from pressed against the pillow to two feet from it. From its location by the direct evidence, says respondent, it would have been impossible to have made powder marks on the pillow unless the deceased had been shot in the top of the head, if there.

It is urged with force by respondent that the strongest fact supporting her case is that Johnson was a right handed

man while the evidence shows that he was shot on the left side over the temple, to the left of the left eye, midway between the eyebrow and the hair line. It is contended that all the reported cases in this country show that right handed men when committing self destruction invariably shoto themselves on the right side while left handed men under the same circumstances shoot themselves on the left side. This was a circumstance in support of accidental death that respondent was entitled to have considered.

In its pleas petitioner denied that the deceased came to his death by accidental means and averred that his death was brought about by self destruction but introduced no evidence whatever to support its pleas. It relied on the insufficiency of the evidence offered to support petitioner's case. Petitioner further contends that all the evidence being circumstantial it cannot prevail because it falls short of the test required of such evidence, that is to say, it must show that the circumstances supporting accidental death be fully established, that all facts relied on must be consistent with the hypothesis of death by accidental means, that the circumstances proven must be of a conclusive nature, and should to a moral certainty exclude every hypothesis but that of death by accidental means. Failure to apply this rule constituted the application of the wrong rule of law charged to the court below in his review of the case on appeal.

Petitioner was in error as to the degree of proof required when circumstantial evidence is relied on. In determining whether one committed suicide or died by accidental means, courts are not bound by the preponderance of the evidence rule or the rule requiring the material fact to be proven beyond and to the exclusion of a reasonable doubt, as in criminal cases. They may be guided by circumstantial as

well as direct evidence. The rule most generally approved is that when circumstantial evidence is relied on to establish self destruction, the one relying on it carries the burden of proving it to the exclusion of every reasonable hypothesis of accidental death. By some it has been said that suicide must be established by a preponderance of evidence, and that it easily yields to physical facts clearly inconsistent with it. Others say that the defense of suicide must be established by clear and satisfactory proof, not proof beyond a reasonable doubt, nor a preponderance in the ordinary sense, but such a preponderance as is necessary to overcome the presumption of innocence of moral turpitude or crime. 14 R. C. L. 417 and cases cited.

In a case like this where the evidence is circumstantial, not altogether clear, and as to some facts in hopeless conflict, if the verdict of the jury, as based on such evidence, is one that reasonably prudent men could have reached and is consistent with death by accidental means, it will not be overthrown if supported by a preponderance of the evidence as resolved by the jury even if there is some evidence consistent with suicide. Sovereign Camp W. O. W. v. Hodges, 72 Fla. 467, 73 So. 347.

The courts generally agree that the presumption against suicide will stand until overcome by evidence sufficient to outweigh it. Many considerations enter into this determination such as the presence or absence of motive, physical facts surrounding the death, the place where the body was found, its position, the presence or absence of powder marks when death was caused by firearms, the habits and temperament of the insured, his domestic and social environment as well as pecuniary circumstances, 14 R. C. L. 417.

The presumption against suicide cannot stand against uncontroverted evidence, direct or circumstantial, which points

conclusively to self destruction, but when the cause of death is unexplained or if the evidence tends to establish death by accidental means, or some of the evidence is consistent with a reasonable hypothesis that death was not self imposed the presumption against self destruction may prevail. New York Life Ins. Co. v. Anderson, 66 Fed. (2nd) 705; New York Life Ins. Co. v. Weaver, 8 Fed. (2d) 680.

While a careful study of the cases discloses that when one relies on death by accidental means to recover the burden is on him to prove his reliance, it does not have to be proven by eyewitnesses or other direct proof. It may be deducible from physical or other facts proven and some authorities hold that when plaintiff shows a violent death not self inflicted his case is *prima facie* made out. New York Life Ins. Co. v. Trimble, 69 Fed. (2nd) 849; United States Fidelity & Guaranty Co. v. Blum, 270 Fed. 946.

It is also held on good authority that in cases where the evidence in support of death by accidental means or suicide is so nearly balanced as to leave the question in doubt, the presumption in favor of the theory against suicide will tip the scales in favor of accidental death. Mutual Life Ins. Co. of New York v. Winswell, 56 Kan. 765, 44 Pac. 996; Brown v. Sun Life Ins. Co. (Tenn. Chan. App.), 57 S. W. 415, 51 L. R. A. 252; Supreme Lodge K. of P. v. Beck, 181 U. S. 49, 21 Sup. Ct. 532, 45 L. Ed. 741.

Now let us examine the evidence and see how the verdict squares with the rule of law governing such cases. The deceased was in the room by himself and no one witnessed the tragedy. Whether it was accidental or self inflicted is a matter of conjecture and rests on probabilities. In support of the presumption against suicide no motive whatever is shown for self destruction and it is not suggested that deceased ever at any time intimated such a purpose. His

domestic relations were happy, his social standing was good, and his pecuniary circumstances were in satisfactory condition. He was making enough to live comfortably and his position was secure. His health was good and he was still a young man. His position on the bed, powder burns on the pillow, the hand, and around the bullet hole might have been construed as supporting suicide but the jury resolved the evidence on this point in the negative and they were well within the record in so doing.

In addition to the foregoing the deceased was a right handed man and was shot over the left temple contrary to the general rule in such cases. It was competent for all these facts to go to the jury and since it resolved those on which there was controversy in favor of the hypothesis of death by accidental means with which their finding was consistent and finds support under the rule as here approved it should not be disturbed.

Against the support of death by accidental means petitioner introduced no evidence except that of Dr. Killinger, the material part of which was in response to hypothetical questions based on the evidence of powder burns and the evidence of other facts in hopeless conflict. The jury having disbelieved all of this evidence, there was no predicate for Dr. Killinger's testimony so it vanished. Otherwise the petitioner relies on the alleged insufficiency of respondent's testimony to show that deceased died by accidental means and not only that but asserts that her testimony shows conclusively that Johnson placed the muzzle of his pistol close to his head and pulled the trigger, that the physical facts are otherwise inconsistent with death by accidental means, and that by the testimony of Dr. Killinger, Johnson's death having been instantaneous, if he was still sitting on the bed where he was last seen by his wife, grav-

ity would have pulled him forward to the floor rather than backward to the bed.

As to the position Johnson was in when he was shot there is not a shred of evidence to indicate. Conjectures might be indulged *ad infinitum* on this point. There was some evidence tending to prove that he was cleaning his pistol at the time and if he was he may have been holding it up between his eye and the light to see if it was clean. As to other physical facts two juries, the Judge of the Civil Court of Record, and the Circuit Judge, have resolved them against the hypothesis of death by suicide and for the reasons herein stated we now decline to hold them in error. A thorough consideration of the record does not convince us that the presumption against suicide was rebutted. We do not intimate that the presumption rises to the dignity of evidence. It has no such quality but it controls the result when there is a lack of competent evidence to show death by suicide. It also controls in cases of death by unexplained violence if the defendant relies on suicide and fails to go forward with proof of it. Del Vecchio v. Bowers, 296 U. S. 280, 56 Sup. Ct. 190, 80 L. Ed. 163; Jefferson Standard Life Ins. Co. v. Clemmer, 79 Fed. (2d) 724. Suicide as a barrage to recovery should not prevail in cases like this when the evidence adduced is more consistent with death by accidental means than it is with suicide though neither is conclusive.

The presumption against suicide prevails when the cause of death is unknown. From the evidence in this case no one can say for certain how Johnson came to his death. The judgment could, therefore, be upheld on this theory but when the physical and other facts were resolved against suicide the hypothesis of death by accident was very much strengthened and in fact there was little left to support

death by suicide but suspicion and conjecture. The verdict is consistent with accidental death and is one that reasonably prudent men could have reached.

We are further impressed that under the facts in this case the judgment below is sound in law. The ultimate question involved was whether or not the relator was required to carry out its contract with respondent. If Johnson committed suicide it was not required to do so. It was entitled to the protection of the law no less than respondent in determining this but if the evidence is more consistent with death by accidental means than it is with death by suicide and a jury of reasonable men so find, even if the cause of death is not settled beyond doubt the relator should be required to comply with its contract. When suicide is relied on as a defense there must be proof of it sufficient to overcome the showing of death by accidental means.

On certiorari we do not weigh the effect of the evidence, we can reach it if a wrong rule of law is applied to it. To determine whether this has been done necessarily requires an examination of the record to determine whether there is any evidence to support the verdict. We are unable to say that a wrong rule of law has been applied in this case so our former judgment quashing the writ of certiorari is reaffirmed on rehearing.

Writ of certiorari quashed on rehearing.

Ellis, P. J., and Buford, J., concur.

Whitfield, C. J., and Brown and Davis, J. J., concur in the opinion and judgment.

Per Curiam.—The pleas upon which the trial was had in the Civil Court of Record denied that the death of the insured "resulted from the accidental means alleged" and denied "that the cause of the insured's death alleged was accidental" but did not aver that the death of the insured

was produced by self destruction. A plea of suicide was withdrawn. However, the petition filed here by the defendant below for certiorari, alleges that the petitioner's motion in the trial court for a directed verdict in its favor contained "as grounds therefor, substantially; That the only reasonable deduction as a matter of law to be drawn from all the testimony in the case is that the insured committed suicide * * *."

The contentions for the petitioner are that the evidence wholly fails to show death by accidental means, and that the courts applied to the evidence a rule that the defendant had the burden of proving suicide of the insured. In discussing the contentions of counsel, the opinion refers to the burden of proof when suicide is averred. References to an issue of suicide may be disregarded.

The opinion on rehearing specifically states that "the burden was on respondent, plaintiff in the action, to prove that death resulted from accidental means." The record does not show the court below ruled otherwise.

The adjudication here is not that the defendant in the trial court had the burden of proving suicide of the insured, but that on certiorari the evidence adduced at the trial is sufficient to sustain the verdict and judgment for the plaintiff which involve a finding of death of the insured by accidental means, such verdict having been approved by the trial court in denying a motion for new trial and by the appellate circuit court in affirming the judgment of the trial court rendered on the verdict. Judgment rendered is adhered to.

WHITFIELD, C. J., and ELLIS, TERRELL, BUFORD and DAVIS, J. J., concur.