### WALKER v. PRUDENTIAL INS. CO. OF AMERICA.

No. 10215.

Circuit Court of Appeals, Fifth Circuit.

May 13, 1942.

Warren B. Parks, of Orlando, Fla., and Murray Sams, of DeLand, Fla., for appellant.

Henry P. Adair and John M. McNatt, both of Jacksonville, Fla., and J. Thomas Gurney, of Orlando, Fla., for appellee.

Before FOSTER, HUTCHESON, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

Mary E. Walker brought suit against Prudential Insurance Company of America to recover under a life insurance policy issued on her husband, Heyward E. Walker. The recovery sought was for double indemnity, the face amount of the policy having been paid. The only issue presented was whether or not the death of the insured was caused by accidental means. The case was tried to a jury, and at the close of evidence for the plaintiff, the court, on motion of the defendant, directed a verdict for the insurance company.

The facts gleaned from the record disclose that Heyward Walker died on July 13, 1940, as the result of a bullet wound sustained by him on May 3, 1940, when a pistol was discharged approximately twelve to eighteen inches from his body. The bullet entered his left side near the ninth rib, then ranged downward from left to right, and lodged near the second lumbar vertebra, "two inches from the spine, one inch beneath the skin." Walker was right-handed.

Walker's home was located in the outskirts of Sanford, Florida, at the end of a dead end street, and the nearest house was two blocks away. He was alone in his home when the wound was inflicted. It is shown that Mrs. Walker left the home at about 4 or 4:30 o'clock in the afternoon; that Walker agreed to meet her later at a boarding house for supper, but failed to do so; that after eating supper, Mrs. Walker telephoned home, but received no answer; that she then returned home, arriving there about 6:20 o'clock, and found her wounded husband in the guest room lying on a bed which was located about two feet from the entrance to an adjoining screened porch; that he was stretched out on the bed with a pillow under his head, and with the spread pulled up on him; that he was dressed and had a top shirt on; and that he was conscious, but was "not at himself." Mrs. Walker found the pistol out on the screened porch; it was on the floor and several feet away from a table upon which was found an oil can, cleaning rags, four undischarged pistol cartridges which appeared to be corroded, and a moving picture machine which had been removed from its case. The pistol was what is commonly known as a 32 calibre Smith & Wesson "lemon squeezer" which holds five cartridges; and it was shown that to discharge this kind of pistol in a normal manner its firing mechanism required that one squeeze the handle and pull the trigger at the same time. The pistol belonged to Walker, and was usually kept in a chest of drawers in his bedroom. He did not carry the pistol on his person, but kept it in the house for protection, and never moved it except to clean it. Walker had owned the gun for five years, having bought it second-handed after his house had been robbed. The moving picture machine found upon the table was usually kept in its case in a drawer in the dining room. Walker's shoes were found out on the porch, and it was shown that it was his custom to remove his shoes when he went there to rest.

When Mrs. Walker entered the room and found that her husband had been shot, she immediately called the doctor and asked him to come at once. The doctor was engaged with an accident case at the time and could not come, and requested that Mrs. Walker bring her husband to the office if she could do so. She thereupon put a sweater and shoes on her husband, and helped him as he walked to the car. At the doctor's office he was examined and X-rays were taken of his body. He was

then removed to a hospital where he remained until he died. The doctor did not consider the wound fatal or dangerous on first examination, and all along was of opinion that the patient would recover.

Dr. Hugh West, a practicing physician and surgeon of Deland, Florida, a brother of Mrs. Walker, reached the Walker home in Sanford about eight o'clock in the evening after Walker had been shot. He went out on the porch and looked at the pistol which was then on the table. While examining the pistol he told his sister, Mrs. Walker, that it was "just good to get someone into trouble", and that he would take the " * * * thing and throw it in the St. Johns River". The next morning Mrs. Walker did throw the pistol into the river. She did not know that her husband carried a policy of insurance with double indemnity provision. At all times she was under the impression that her husband was not fatally wounded and that he would get well.

The oil can, cartridges, and moving picture machine were introduced in evidence. There was also introduced in evidence a pistol exactly like the one with which Walker was shot, the only difference in the pistols being that Walker's had pearl handles, and the one introduced in evidence had black handles and was new.

Walker was in debt and had outstanding and unpaid checks at the time he was shot. It was further shown, however, that he was owner of a dairy and part owner of the Seminole Creamery in Sanford; that he was secretary-treasurer of the Florida Dairy Products Association; that his salary, including expense account, was approximately $225 per month; that he was happily married; that at the time he was shot he was in good health, was optimistic, and was enthusiastic about his new business; and that throughout his illness he cooperated with his doctors and nurses and appeared to be anxious to get well.

■ The burden was on the plaintiff to establish accidental death of the assured, and this fact could be shown and proved by circumstantial evidence. Mutual Life Insurance Co. v. Johnson, 122 Fla. 567, 575, 166 So. 442. Not one shred of evidence can be dredged up from the record which compels a finding of suicide. The facts and circumstances shown in this case present a reasonable theory of accidental death, and clearly made an issue for the jury under the Florida rule announced by the Supreme Court of that State in similar cases. Mutual Life Insurance Co. v. Johnson, supra; Mutual Life Insurance Co. v. Bell, 147 Fla. 734, 3 So.2d 487; Provident Life & Accident Ins. Co. v. Nitsch, 5 Cir., 123 F.2d 600, 138 A.L.R. 399; Union Central Life Ins. Co. v. Cooper, 5 Cir., 115 F.2d 222.

■ When Mrs. Walker returned home and entered the room, she called to her husband and said, "I thought maybe you had fallen asleep." He replied, "No, I have had an accident; I have shot myself." This statement was offered in evidence by the plaintiff, but the court sustained an objection of the defendant and declined to permit its introduction. The statement should have been admitted. The continuity of the main transaction had not been broken, and there was nothing present to induce or indicate a self-serving declaration on the part of the injured man. He was still at the place of his injury. The pistol with which he had been shot was still on the floor out on the porch and just a few feet away from him. His wife was the first person to reach him, and she was the first person to whom he could or did speak. He was evidently suffering from the effects of the wound and the consequent shock and daze. The statement which he made was so closely connected with the main event as to be practically a part of the transaction, or at least to grow immediately and with unbroken continuity out of it. We think that the surrounding facts and circumstances give to the statement a substantial guaranty of trustworthiness and that the proffered evidence should have been admitted. Cf. Lambright v. State, 34 Fla. 564, 16 So. 582; Atlantic Coast Line Railroad Co. v. Shouse, 83 Fla. 156, 91 So. 90; Hartford Accident & Indemnity Co. v. Olivier, 5 Cir., 123 F.2d 709.

■ The court committed no error in declining to permit the plaintiff to show what the deceased had said to the doctor at his office as to how he had received his injuries. There was no error in the admission and rejection of evidence as to the firing of pistols by the gunsmith, and since there is to be a new trial no good purpose could be served by discussion of these rulings.

The judgment is reversed and the cause is remanded for a new trial not inconsistent with this opinion.

Reversed and remanded.

HUTCHESON, Circuit Judge (specially concurring).

I concur in the result of the case and in all that is said and ruled in it except what was said and ruled in respect of the court's exclusion of the deceased's statement to his wife, "No, I have had an accident. I have shot myself." By Rule 43, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, the district judge was enjoined to admit evidence which is admissible either "under the rules of evidence heretofore applied in the courts of the United States" or under those applied in the courts of the state in which the United States court is held, in case of a conflict, the rule which favors the reception of the evidence to govern. Under that rule, the district judge's action in excluding the evidence was not error, for both under the rule "heretofore prevailing in the United States Courts", Bonner v. Texas Company, 5 Cir., 89 F.2d 291; Chesapeake & Ohio Railroad Co. v. Mears, 4 Cir., 64 F.2d 291, and under that prevailing in Florida, where the action was tried, Atlantic Coast Line R. Co. v. Shouse, 83 Fla. 156, 91 So. 90, 97, whether statements offered as res gestae are admissible under the rule depends in each case on its own facts and the trial court has a sound discretion to determine whether the facts bring the proffered evidence within the rule. A prime requisite in the courts of the United States and those of Florida, for the admission of statements of a deceased person, as a part of the res gestae is that they must be shown to have been voluntary and spontaneous and not a narrative of a past event. Authorities supra, and Halleck v. Hartford Accident & Indemnity Co., 5 Cir., 75 F.2d 800. It cannot therefore, I think, reasonably be said that the district judge erred in excluding the statement which was made by Walker some time after the injury and while lying quietly on his bed, in response to a direct question by his wife as to what happened.[1]

It must be kept in mind that we are not asked here to sustain the exercise of the trial court's discretion but to reverse it. What we ought to have done, if the evidence had been admitted and the complaint was of its admission, nor what we ought to do if on another trial it be admitted and the admission is complained of, is not before us. All that is before us is, did the judge in ruling as he did, abuse his discretion? I think it plain that, except in Texas where the rule in regard to admission of res gestae statement, Cf. Hartford Accident & Indemnity Co. v. Olivier, 5 Cir., 123 F.2d 709, is very much more liberal than that heretofore prevailing in the federal courts and in Florida, only the exercise of the trial court's discretion in favor of admission, could admit them. His exclusion of them from the evidence cannot, I think, be said to be an abuse of his discretion.

I therefore dissent from the ruling that the exclusion of the deceased's statement was reversible error.

---

[1] "A. Before I got to his room I called him by the name of Heyward.

"Q. What next happened with reference to any statement that he made? A. He answered, and, of course, in the meantime, you see, I was walking toward the room and I found him lying on the bed and then I asked him what happened. And he said—I said, 'I thought, maybe, you had fallen asleep.' and he said, 'No, I have had an accident; I have shot myself.'

"Q. What next did you say to him, if anything? A. I asked him how it happened.

"Q. What did he say? A. He told me he was cleaning this pistol and had gotten all of the bullets out but one, there were five in it, and it accidentally discharged while he was trying to get it out, and the four bullets were there on the table and were all corroded.

"Q. Did you ask him why he didn't answer the telephone? A. I did.

"Q. What did he say? A. He said, 'I was in pain and I couldn't get up'."