## STEWART v. BALTIMORE & O. R. CO.
### No. 291.

Circuit Court of Appeals, Second Circuit.
July 19, 1943.

John C. Robinson, of New York City (Morris A. Wainger and William Paul Allen, both of New York City, of counsel), for plaintiff-appellant.

Robert Schwebel, of New York City (William C. Combs, of Rochester, N. Y., of counsel), for defendant-appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The plaintiff's intestate was employed by the defendant, Baltimore and Ohio Railroad Company, as a hostler helper at East Salamanca, New York. On the evening of October 30, 1941, the decedent suffered a coronary thrombosis which as the plaintiff's testimony indicates, had resulted from straining himself while attempting to throw a defective switch in the defendant's railroad yard. He did not recover from the

thrombosis and died on November 24, 1941. He had been in good health prior to October 30.

The decedent had been in the employment of the defendant for many years and had for some months prior to his attack been working as a hostler helper with another employee named Edman. Edman testified that about 10 o'clock on the night of the accident he was on an engine at the railroad coal chute coaling an engine and that it was decedent's duty to throw a yard switch so that the engine, after being coaled, might be taken to the place where its crew was to pick it up. This coal chute was about 400 feet from the switch stand. While Edman was in the cab of the engine the decedent came over and told him that he had "tried to throw the switch and couldn't do it," that "he had wrenched his side in trying to do it," and that "he felt a kind of click in his side." The decedent then climbed into the engine car and Edman ran it to the switch, got off and threw the switch by using a small iron bar about two feet long as a pry. He had used the bar on other occasions to throw this switch which was "brand new," and hard to move, but had never used it to throw any other switch. Shortly after leaving the engine the decedent quit work for the day and arrived at his home about 11:15 P. M. About 1 A. M. the next morning he began to suffer an attack of severe pain in his chest and arms and his physician, Dr. Unger, was sent for. Unger testified that in order to make a diagnosis he obtained from him a history as to the circumstances under which his illness began and was told "that his pain began around 11 o'clock P. M. when he was trying to turn one of those big railroad switches. Shortly thereafter he felt a sharp pain in his chest and sick since this minute." Dr. Unger further testified that his diagnosis of the decedent's malady was a coronary thrombosis and that the decedent "died of the direct consequences of the injury during his work. * * * This throwing the switch."

Three days before decedent's death a member of his family called in Dr. Lee Gunn, the defendant's railroad doctor, who found him in severe pain and very restless. Dr. Gunn testified that the patient had suffered a coronary thrombosis or embolism and had said that he had sustained "an exertion," and gave "a history of exertion." The doctor also testified that the exertion was a "contributory cause" of death but, at another point in his testimony, said that some medical authorities hold that a coronary thrombosis can be brought about by exertion and some that it cannot.

Upon a record of which the foregoing is an outline the trial court directed judgment dismissing the complaint at the close of plaintiff's case, and the latter has appealed. We think that the judgment must be reversed because there was enough evidence to require submission of the case to the jury and also because there was error in excluding important evidence offered on behalf of the plaintiff.

The defendant seeks to justify the dismissal of the plaintiff's claim on the ground that the switch was not really defective but only hard to move because new and stiff. But it should be observed that the decedent threw three other switches without difficulty on the very evening he strained himself with the switch in question and that Edman did not need to use a bar in order to throw any of the other switches. There is no proof that the defendant had tested the switch after it was installed or had done anything to prevent its being used by an employee without undue exertion. In our opinion it was for the jury to say whether operation of the switch in question was so likely to result in injury from over-exertion that a prudent employer would not have supplied it to his workmen, but would rather have furnished a more easily turned appliance. There have been many decisions which have held that it is negligent to require a workman to move articles that are too heavy for him to lift without help. Albertz v. Bache, G.T., First Dept., 57 Hun 592, 10 N.Y.S. 639; Bowman v. Kansas City Electric Light Co., Mo.App., 213 S.W. 161; Stewart Dry Goods Co. v. Boone, 175 Ky. 271, 194 S.W. 103; Illinois Cent. R. Co. v. Langan, 116 Ky. 318, 76 S.W. 32; Culver v. Union Pac. R. Co., 112 Neb. 441, 444, 445, 199 N.W. 794; Rice v. Garrett, Tex.Civ.App. 194 S.W. 667; Bonn v. Galveston & S. A. R. Co., Tex.Civ.App., 82 S. W. 808; Boyd v. Great Northern R. Co., 84 Mont. 84, 274 P. 293. It is true that in these cases recovery sometimes failed because of proved knowledge by the employee of the danger and involuntary assumption of the risk but, by the amendment of the Federal Employers' Liability Act in 1939, as amended by 53 Stat. 1404, Title 45 U.S.C.A. § 54, "the doctrine of assumption of risk was obliterated" as a defense to negligence on the part of the carrier and there was left

"for practical purposes only the question of whether the carrier was negligent and whether that negligence was the proximate cause of the injury." Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 58, 66, 63 S.Ct. 444, 446, 87 L.Ed.·——. The decision of the Texas Court of Civil Appeals, in Hines v. Ross, 230 S.W. 1066, relied on by the defendant, really turned on the question of assumption of risk and hence has no pertinency in view of the amendment of 1939. The same thing may be said of the decision in Jirmasek v. Great Northern R. Co., 151 Minn. 421, 186 N.W. 814.

Doubtless an employee cannot recover damages for every harm he may suffer through failure of his employer to provide him with the best sort of appliance unless the situation is such that the chance of injury can be reasonably foreseen. But where, as here, the likelihood of injury from the operation of a switch that was hard to turn cannot be said to have been beyond a reasonable apprehension the question whether the employer maintained a proper standard of care was for the jury. Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. ——. Over-exertion resulting in serious casualties is something which can as well be foreseen as many other occurrences and is something which an employer may be thought bound to take all reasonable steps to prevent.

█ It follows from the foregoing that the plaintiff made a good prima facie case which should have been submitted to the jury unless proof of the accident was lacking because it was based on improper hearsay evidence. There was no eye-witness of the decedent's exertion in throwing the switch. The only testimony as to the accident was by Edman who narrated the occurrence; by another fellow-employee named Odell, who said that the decedent, looking "tired," met him just before eleven o'clock on the evening of October 30 and said: "I guess I strained myself on the switch or switches," and by Dr. Unger and Dr. Gunn to whom the decedent gave a history of his exertion as a basis for the diagnoses they were attempting to make. The court excluded as hearsay the testimony of Odell and certain important items of Dr. Unger's report of his call on the decedent the night of the accident. It admitted some hearsay testimony of Edman but excluded his affidavit (Exhibit 4) in spite of the fact that Edman testified the affidavit was true and though it contained evidence somewhat inconsistent with his other testimony. Inasmuch as Edman proved a hostile witness the plaintiff was entitled to cross-examine him for purposes of impeachment and after he had testified that the affidavit was true, to use his statements in the affidavit as affirmative proof of her case. Therefore Exhibits 3 and 4 were both admissible not only as bearing on the credibility of the witness but as affirmative evidence. Their use as affirmative evidence was permissible because Edman testified that the statements made in these exhibits were true. Jenkins v. 313-321 W. 37th St. Corp., 284 N.Y. 397, 402, 31 N.E.2d 503; United States v. Freundlich, 2 Cir., 95 F.2d 376, 379.

█ The testimony of Edman about what the decedent told him regarding his difficulty in throwing the switch was admissible under the res gestae rule. Decedent's statements to Edman were near enough to the event in time to be regarded as spontaneous and they apparently were made without any deliberation or motive to distort the facts. Insurance Co. v. Mosley, 8 Wall. 397, 19 L.Ed. 437; Westall v. Osborne, 2 Cir., 115 F. 282; Rast v. Mutual Life Ins. Co., 4 Cir., 112 F.2d 769, 773; Walker v. Prudential Ins. Co., 5 Cir., 127 F.2d 938; Marsh v. Preferred Acc. Ins. Co., 6 Cir., 89 F.2d 932; Fort Street Union Depot Co. v. Hillen, 6 Cir., 119 F.2d 307; Travelers' Protective Ass'n v. West, 7 Cir., 102 F. 226. On the other hand, the statement of the decedent to Odell was made about an hour after the accident and, in view of the tendency of the courts to confine the res gestae exception to hearsay to statements made in proximity to the event to which they relate, we think the exclusion by the trial judge of Odell's testimony about the decedent's declarations to him cannot be regarded as an abuse of discretion. Fort Street Union Depot Co. v. Hillen, 6 Cir., 119 F.2d 307. The recent New York decision in Handel v. New York Rapid Transit Corporation, 252 App.Div. 142, 297 N.Y.S. 216, affirmed 277 N.Y. 548, 13 N.E.2d 468, limited the res gestae exception to the hearsay rule most severely and, in our opinion does not represent the more liberal view shown by the United States Courts in dealing with such testimony. Under Rule 43(a), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, we should follow the more liberal practice.

Some of the testimony of Dr. Unger was rejected as hearsay; most of this excluded testimony, in our opinion, should have been received. The witness was engaged in obtaining information from the decedent regarding the nature and extent of his exertions in order to satisfy himself as to the cause and nature of his illness and to administer proper treatment. The information was important for these purposes and there apparently was no reason to view the testimony as improbable. Such statements to physicians have been held by this and other courts as outside of the rule against hearsay and have been admitted because a patient seeking medical advice is not likely to make untruthful statements to his physician where he is not being consulted in order to present a claim or to prepare for trial. They are admissible for quite different reasons than that they are spontaneous utterances under the rule of res gestae. Meaney v. United States, 2 Cir., 112 F.2d 538, 130 A.L.R. 973; United States v. Calvey, 3 Cir., 110 F.2d 327, 330; United States v. Tyrakowski, 7 Cir., 50 F.2d 766, 771; United States v. Nickle, 8 Cir., 60 F.2d 372, 374; United States v. Roberts, 10 Cir., 62 F.2d 594, 596. We think that the testimony of Dr. Unger as to decedent's declaration, except the words "but the switch was out of order," was admissible. Those words were no more than a narrative of something that was unnecessary to enable the physician to make a proper diagnosis of the case or to treat the patient. Moreover, those words did not accurately describe the condition of the switch because it was not properly speaking "out of order," but merely new and unduly hard to move.

For the errors we have mentioned the judgment is reversed.

CHASE, Circuit Judge (dissenting).

My only disagreement with the majority is in the conclusion that the record shows at least that the defendant was prima facie negligent in respect to the installation and maintenance of the switch. The failure of the plaintiff, as I see it, to prove the defendant negligent makes the judgment right and makes harmless any error which may have been committed in respect to the evidence.

We must give effect to the fact that no compensation act covers such an injury as the plaintiff's intestate received and that the defendant has not yet been made an insurer of any kind as to such accidents. The sole basis of its liability, if there is any, must be its negligence which caused the injury. No one disputes that.

So what was the defendant's negligence? It is said to have been in permitting a new switch, which the deceased was hired to throw in the course of his work, to operate so hard he could not take hold of the handle and throw it as such switches ordinarily are thrown. It should not be forgotten that he was not required to pull any harder on the handle than he saw fit and that after he had tried and failed he was at liberty simply to report that fact to Edman as he did. There was no emergency and no duty on the part of Stewart but to try as best he could without injury to himself. The work of a railroad brakeman is, of course, strenuous and men who follow it must at times exert themselves harder than at others and will, it is reasonably probable, sometimes try to move something they cannot budge. That is all in the day's work and the elimination as one of the possible defenses to an action for negligence of what has been called the assumption of risk doctrine does not, or so it would seem, change in the slightest the burden still resting upon a plaintiff to prove the defendant negligent. See concurring opinion of Mr. Justice Frankfurter in Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 68, 63 S.Ct. 444, 87 L.Ed. ——. It is not the equivalent of establishing a new cause of action. Liability is still based solely on negligence which still is what it was before and the likelihood of injury was so negligible that the railroad did not fail in any legal duty it owed the deceased when it merely let him try as he would to throw this switch.

It may be good policy to enact laws which will make the industry bear the pecuniary loss of such accidents as this, but until then and while tort liability alone is relied on, I cannot believe that juries ought to be allowed to decide how easy a new railroad switch should turn. That will certainly create differing standards; perhaps as many as there may be juries to decide; and such standards on the same railroad will vary from jury to jury. It will supplant the judgment of railroad engineers based upon training and experience in actual railroad operation with that of the collective notion untrained and inexperienced jurors may get from the evidence weighed in the light of their own ideas on the subject and will, I

think, be contrary to what is now the prevailing law. Delaware, etc., R. R. v. Koske, 279 U.S. 7, 11, 49 S.Ct. 202, 73 L.Ed. 578; Toledo, St. L. & W. R. Co. v. Allen, 276 U.S. 165, 170, 48 S.Ct. 215, 72 L.Ed. 513.

That the deceased was under no compulsion, contractual or otherwise, to overexert himself on this switch or that the defendant should reasonably have foreseen that he, or anyone else, would do so and be hurt seems clear beyond fair debate from the following evidence of Edman which was relied on by the plaintiff, and not controverted by the defendant, to show the condition of the switch so soon after the deceased tried in vain to turn it that its condition had not been changed meanwhile. Edman testified as to that as follows:

"Q. Well, he did get on this engine and then what happened? A. He got up on the engine and he rode up with me to the switch and I went down and throwed the switch myself.

"Q. You say you went down and threw the switch. A. Yes.

"Q. How did you throw it? A. Throwed it with my hands.

"Q. Did you have anything in your hands to throw the switch with? A. Yes, I did, I had a little bar standing down there, been there for some time, I don't know what they used it for, I would grab hold of that, it was a little hard to throw the switch that day and I put a little bar on it and throwed the switch without no trouble.

"Q. What kind of a bar was that you throwed it with? A. Well, a piece of iron about two feet long.

"Q. What was it used for ordinarily? A. I don't know, it was old scrap iron, somebody left it there.

"Q. But you used this iron bar to throw the switch; is that right? A. Yes, that is right.

"Q. You say you found it a little hard to throw? A. Yes.

"Q. It that right? A. I thought I would use the bar to make it easier for myself.

"Q. How long had you been using the bar to throw that particular switch? A. I don't remember how many times.

"Q. You had thrown it before, had you not? A. I had thrown it all the time.

"Q. How long had that switch been there? A. I couldn't remember, not very long, it was a brand new switch.

"Q. Well, would you say it was there a week? A. Possibly, maybe more, I don't know, I couldn't remember, I never keep no track of switches.

"Q. But you found that you needed to use this iron bar in order to throw it, didn't you? A. Why, yes, I used that little bar, used it once or twice— * * *

"Q. You mean you didn't have to use the bar for another switch? A. Yes.

"Q. And you didn't use it for throwing any other switch; it that right? A. No.

"Q. Wasn't it an iron shaker bar you used to throw this switch with? A. Might have been, might have been an old one broken off about 2 or 3 feet long, I couldn't just—kind of flat, about an inch and a half wide, about an inch and a half thick."

Because it seems to me that fair jurors could not reasonably decide on this evidence that the defendant was negligent, I think the trial judge was clearly right in deciding that issue as a matter of law. Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720.