GULF LIFE INSURANCE COMPANY v. JULIAN C. WEATHERS-
BEE, JR., and BETTY MARG WEATHERSBEE, minors, by the
COMMERCIAL BANK AND TRUST COMPANY, a Corporation,
Guardian.

172 So. 235.
Division B.
Opinion Filed October 16, 1936.
On Rehearing January 29, 1937.

*Doggett, McCollum, Howell & Doggett,* for Plaintiff in Error;

*H. M. Hampton* and *W. Robert Smith,* for Defendant in Error.

TERRELL, J.—In February, 1931, Gulf Life Insurance Company issued a policy of insurance on the life of Julian C. Weathersbee for $5000.00 payable to his children, Julian C. Weathersbee, Jr., and Betty Marg Weathersbee. It was provided that in the event of death and claim for the face of the policy "The accrued interest of three and one-half per cent. on each share of the $2500.00 is to be paid annually until the beneficiaries attain age twenty-one. As each beneficiary attains age twenty-one his share of $2500.00 will be paid in a lump sum."

The policy also contained a double indemnity contract, the material part of which is as follows:

"The Company hereby agrees to pay an additional sum of Five Thousand and No/100 Dollars to the person or persons to whom the proceeds of the Policy are payable and in like manner upon receipt of due proof that the death

of the Insured occurred * * * as a result of accidental drowning, or of bodily injury received after this contract becomes effective, caused solely by external, violent, and accidental means * *' * provided all premiums have been duly paid.

"It is mutually agreed that said additional sum shall not be payable if the Insured's death results from intentional drowning, or bodily injury inflicted by the Insured himself, while sane or insane, or intentionally by another person. * * *"

As will be noted from the contract, payment of double indemnity, if such accrued, was to be made to the beneficiaries in the same manner as the face of the policy.

The insured was found dead on his place near Ocala, June 26, 1933, with a gunshot wound in his breast. The evidence indicates that he stopped his car in the road near his home by the side of his field fence, took his gun, climbed over the fence which was about waist high, proceeded about one hundred yards into the field, and returned over practically the same course to the point from which he started. When he reached the fence on the return he leaned his gun against it and went to a post about six feet away, climbed over, and returned to get his gun where the contents of one barrel was discharged into his body. The gun was a double-barrel hammerless shotgun and was pointed through the fence. This occurred early in the morning and insured was found dead several hours later lying near the gun, the presumption being that he undertook to pull the gun through the fence and shot himself accidentally. No one witnessed the tragedy and no motive or cause was shown for self destruction.

The Commercial Bank and Trust Company of Ocala was appointed guardian for the beneficiaries, both of whom were

minors. The guardian submitted proof of death and claimed both the face of the policy and the double indemnity. Gulf Life Insurance Company admitted its liability on the face of the policy but declined payment of double indemnity. The pertinent part of its letter declining payment of double indemnity is as follows:

"The proofs furnished, and our own investigation, as made, do not show that the death of the insured occurred as result of bodily injury caused solely by external, violent or accidental means, within the terms of the supplemental contract providing for an additional payment of $5,000.00 for accidental death. In the face of these circumstances, the Gulf Life Insurance Company, in the performance of its duty to its other policy-holders, must, in all good faith, decline to recognize or make payment on the Double Indemnity feature."

The guardian then brought this action to recover on the contracts, the first count of the declaration being grounded on the main contract and the second count on the double indemnity contract which sought to recover the full amount of $5,000.00 on the theory that the letter as above quoted amounted to repudiation of the latter contract. At the close of plaintiff's testimony the defendant announced that it had no evidence to submit. The trial court directed a verdict for the plaintiff for the full sum of the double indemnity and a reasonable attorney's fee. A motion for new trial was denied, final judgment was entered, and writ of error was prosecuted to this Court.

It is first contended that whether inflicted intentionally or unintentionally by the insured while sane or insane, the Gulf Life Insurance Compay is not liable under the contract for double indemnity.

This contention would limit recovery to accidents caused

by third parties. We do not so limit the terms of the contract. We construe it to provide double indemnity upon the receipt of due proof that the death of the insured occurred as a result of bodily injury received after the contract became effective, caused solely by external, violent, and accidental means. The limitations on double indemnity payments as contended for apply to "intentional" bodily injury inflicted by the insured himself or another but they do not cover accidental injury inflicted by either.

Was that part of the letter of April 4, 1934, as here quoted, such a renunciation of liability as would support an action to recover the full amount of $5,000.00 claimed under the double indemnity provision of the contract.

The trial court answered this question in the affirmative. Defendant in error contends that the trial court answered correctly and relies on Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 838, 44 L. Ed. 953; McGehee Lumber Co. v. Tomlinson, 66 Fla. 536, 63 So. 919; Stanley v. Anthony Farms, 93 Fla. 295, 112 So. 57; Thompson v. Kyle, 39 Fla. 582, 23 So. 12; Milburn v. Royal Union Mut. Life Ins. Co. 209, Mo. 228, 234, S. W. 378; Travelers' Protective Ass'n of America v. Stephens, 185 Ark. 660, 49 S. W. (2d) 364; and other cases to support his contention.

We have examined the contracts involved in these cases and do not consider them decisive of the case at bar. In order that renunciation accelerate the full amount of deferred payments claimed on a contract the maker either before or after the time of performance has arrived must refuse to pay and deny any liability whatever on the contract. When this has been done the injured party may treat the contract as repudiated or broken and pursue his remedy to recover in a single action all that may be ulti-

mately due. There must be an actual unequivocal breach of the contract before this right matures.

The contract in question provided for the payment of double indemnity "upon receipt of due proof" that the death of the insured occurred solely as a result of external, violent, and accidental means. The letter relied on admitted liability on the main contract but refused payment on the double indemnity contract because the proof and its investigation did not show that the death of the insured occurred as a result of accidental means. The provision for double indemnity was not repudiated or denied. The company was handling trust funds and it was its duty to refuse payment of double indemnity until proof was submitted supporting accidental death.

The point of difference between the parties was in the degree of proof. The terms of the contract providing that accrued interest of three and one-half per cent. on each share of $2500.00 is to be paid annually until the beneficiaries attain the age of twenty-one and as that age is attained the share is to be paid in a lump sum were not questioned or in any sense denied. The company had a right to stand on the contract and refuse payment until proof of accidental death was offered, in fact it was warranted in doing this if the state of the evidence was such that reasonable men might have differed as to what it established. After the death of the insured the company was in fact a trustee administering a trust fund as provided by the insured. It was not the ordinary case in which one party agrees to pay another a stipulated sum on stated conditions and then the first party repudiates. It is contended by appellee that this holding will require a new action each time an interest installment falls due. We think this contention is without

merit.   Proof of accidental death on the first claim will conclude that question as to all claims.

The question of whether or not the evidence was sufficient to establish accidental death was essentially a jury question and ordinarily an instructed verdict thereon would be reversed.   In determining whether one committed suicide or died by accidental means, courts are not bound by preponderance of evidence rule or rule requiring material facts to be proven beyond a reasonable doubt as in criminal cases, but may be guided by circumstantial as well as direct evidence.   Accidental death need not be proven by eyewitnesses but may be deducible from physical and other facts proven.   Mutual Life Ins. Co. of New York .v. Johnson, 122 Fla. 567, 166 So. 442.

Presumption against suicide is not evidence but controls the result when there is lack of competent evidence to show death by suicide and also controls in cases of death by unexplained violence if defendant relies on suicide and fails to go forward with proof thereof on that point.

In the case at bar the defendant did not go forward with proof of suicide, it offered no evidence on this point or any other but relied on the inconclusiveness of the plaintiff's testimony to prove accidental death.   The evidence submitted was all circumstantial and should have gone to the jury.   It pointed very strongly to death by accident and when aided as it was by the presumption against suicide, there being no evidence whatever pointing to the latter, the jury could have reached no other verdict.   The instructed verdict for the plaintiff was consequently harmless error.

It follows that the judgment below for the error pointed out herein must be and is hereby reversed.

Reversed.

WHITFIELD, C. J., and ELLIS, and DAVIS, J. J., concur. BUFORD, J., dissents.

BROWN, J. (dissenting in part).—I do not think we should hold in a case of this kind that an instructed verdict was harmless error. Where the evidence on the vital issue raised by the pleadings was of a circumstantial character and was such that the issue should have been submitted to the jury, the instructions to the jury to find a verdict in favor of the plaintiff was not only error, but to my mind highly prejudicial and harmful error. See Bass v. Ramos, 58 Fla. 161, 50 So. 945, 138 Am. St. Rep. 105.

### ON PETITION FOR REHEARING.

On petition for rehearing, Defendants in error contend that the opinion of this Court leaves them in doubt as to liability on the policy, as to whether the declaration stated a cause of action, and as to what amount they are permitted to recover under the policy.

All of these questions are elaborated on in the opinion but the substance of our holding was that the beneficiaries under the policy are entitled to recover both the principal and the double indemnity named in the policy, but to be paid in the manner stated therein and not in a lump sum as contended.

This would seem to dispose of the other questions on which defendants in error are confused, so with this explanation the judgment of reversal is confirmed on rehearing.

ELLIS, C. J., and WHITFIELD, TERRELL, BROWN, BUFORD and DAVIS, J. J., concur.