**METROPOLITAN LIFE INSURANCE COMPANY, a corporation, v. AMANDA JENKINS, joined by her husband, Edgar Jenkins.**

12 So. (2nd) 374         January Term, 1943
March 5, 1943         Division B
Rehearing Denied April 5, 1943

*L. S. Julian* and *Shutts, Bowen, Simmons, Prevatt & Julian,* for appellant.

*L. Raymond O'Steen,* for appellee.

SEBRING, J.:

Appellee sued on the accident features of two policies of insurance which insured her son, Howard K. Jenkins, against death sustained through external, violent and accidental means, not contributed to directly or indirectly, or wholly or partly, by disease or bodily or mental infirmity. Verdict was for appellee. The appellant appeals.

Howark K. Jenkins was the owner of a comparatively new automobile. On August 2, 1941, he was driving the car south along an asphalt highway, at about 6 o'clock in the evening. The automobile suddenly left the highway, struck a tree 24 paces from the point where it left the road, plowed through a field of rocks, weeds and underbrush, jumped a railroad track, and plunged into a rock pit of water 20 feet in depth, 130 paces away. Nobody saw the car leave the highway; but two witnesses saw it as it plowed through the field.

Before the car became completely submerged, and while his head was still above water, insured's left arm was seen to be "twitching and jerking" to such an extent that one of the witnesses, who had swum to the rescue, was of the opinion that Jenkins was trying to open the car door and escape. While alongside the car, the witness yelled to the insured but received no answer, the insured being apparently dead, dying, or unconscious. Being unable to effect a rescue, the witness swam back to shore. Shortly afterward, the automobile, with its victim in it, sank out of sight.

The road bed upon which insured had been driving was smooth, straight, dry and level. The day was clear and visibility was good. There were no obstructions on the highway at the point where the car left the road. Neither were there any skid marks, broken glass, or other signs indicating that the brakes had been suddenly applied, or that the automobile had come into collision with another object.

Later in the evening, the submerged automobile was raised from the rock pit. When insured's body was finally

removed from the car, there was a bruise and a laceration on his forehead, and his neck was broken. Found on the body was a card, which read as follows:

"Howard Jenkins
611 S. 4th Place
Hialeah, Florida.

"Subject to convulsions, in case of an attack no doctor needed. Let me stay quietly until I awake naturally."

The burden of proving that death was within the terms of the policy rested upon the plaintiff. Under the pleadings and contract of insurance, it was necessary for plaintiff to prove not only that death was by external, violent and accidental means, but that it was not contributed to by disease or bodily or mental infirmity. Appellant contends that this has not been done. Its theory is that as insured was driving along the highway he was suddenly stricken with a convulsion, rendering him powerless to control his vehicle, with the result that the accident occurred. To sustain its contention appellant produced two physicians, who testified as witnesses.

Dr. Paul Kells testified that he examined Jenkins professionally in 1934. From his diagnosis made from observation of the patient, and from the history of the malady given by the father and mother of deceased, he was of the professional opinion that Jenkins had idiopathic epilepsy of the grand mal type. He had never witnessed an epileptic seizure of the patient; and readily conceded that this would be necessary before the diagnosis could be absolutely confirmed. Idiopathic epilepsy of the type found was likely to produce unconsciousness, and convulsions, at any time, without warning. For the first year of the treatment, Dr. Kells had seen the patient on an average of once every two months. From the last time he had treated him until just shortly before his death in 1941, two years would have elapsed without Dr. Kells having seen the patient. In July, 1941, Jenkins had again called on Dr. Kells. At that time he had told the physician that he had had ten seizures from the time his trouble had first begun. Three of these had occurred during the first six months of 1941.

Upon a hypothetical question framed upon the assumption that Jenkins was suffering from idiopathic epilepsy, and from the testimony supporting defendant's theory of the case, the witness was allowed to testify, over objection, that in his opinion Jenkins must have been experiencing a grand mal epileptic seizure, when his car left the highway. With all candor, the witness admitted that such opinion could be only a guess; since he was not present at the time of the event.

Dr. Marvin Smith testified that he had examined and treated Jenkins in 1937. His diagnosis did not agree with the diagnosis made by Dr. Kells. He found Jenkins suffering with chronic colon infection accompanied by constipation. The patient was not suffering from epilepsy. It is quite common for persons suffering with bowel or colon trouble to have mental disturbances. It is not uncommon for them to have convulsions; but the convulsions are much less severe then with epileptic patients. The patient rarely becomes unconscious, although in some instances the patient will be irrational and unconscious for a short period of seconds or minutes.

Under treatment, Jenkins' condition rapidly improved. The patient was in very good condition, when Dr. Smith last treated him.

The insurer strenuously contends that this testimony, together with the identification card found on the body of Jenkins at the time of death, and the factual conditions surrounding the accident, completely repel the idea that death was solely by accidental means, within the terms of the policy. It theorizes that the events resulting in death must have been set in motion by a sudden epileptic seizure producing unconsciousness, or convulsions, or both, with the result that the car went out of control. According to its contention, the "jerking and twitching" of deceased's arm, as he lay unconscious or dying in his car in the rock pit, was a factual demonstration of the fact that this must have occurred.

The plaintiff explains the presence of the identification

card on the body of deceased by the fact that when her son first began having "mental disturbances" in 1935, she had insisted that he carry such a card on his person. Her reason for doing this was that in case of sudden illness, his name and the nature of his condition would be readily known to those who might attempt to render aid. After suffering two convulsions in 1935, according to the witness, the seizures became much less frequent and much less severe. Such attacks as he had thereafter always came at night, while assured was in bed. His last attack, which came about a year before his death, was very light, producing neither unconsciousness nor convulsions. At no time was his condition such as to interfere with his studies, or his work as a mechanical drawing teacher in the schools of Dade County.

After her son had been placed on a diet, and given treatment, twenty-two months elapsed without a recurrence of the trouble. During this period the insured had made an extended trip out of Florida, traveling alone. Upon that occasion, he had gone into Mexico, thence to California, from there into Canada, east to New York, and home again.

On the day of the accident, insured had been working at his drafting board, making some drawings. In the late afternoon, he had gone out in his car to relax from his labors. When seen a very short time before the fatal accident, he was at a corner drug store, looking for a friend. At that time he was bright and cheerful and in apparent good health and good spirits. A few minutes later he was dead as the result of the accident.

As we have said before, the burden rests upon the plaintiff of proving by preponderance of the evidence that death was within the terms of the policy. An even balancing of the evidence on the issue presented by the declaration will fail to sustain such burden. But such allegations need not be supported by direct proof. Indeed, there are times when such proof cannot be forthcoming. Under such circumstances, it surely cannot be seriously contended that there can be no recovery, simply because there is no direct proof of the precise condition that brought the accident about. If that were the rule, no death by accidental means could ever

be inferentially established; and no accidental death could ever become a ground for recovery under a policy like this, unless it happened in the presence of eye witnesses in such manner as to impress upon them every detail of the accident. The true rule is that such allegations need not necessarily be supported by direct proof. Circumstantial evidence will support a verdict for plaintiff, if the circumstances surrounding and leading up to a violent and external death be such as to create in the minds of reasonable men sitting as jurors, a strong belief that the death was caused solely by accidental means; and as to rationally outweigh the probability that it was contributed to by disease or bodily or mental infirmity. The test of the sufficiency of such proof is whether the circumstances, when viewed as a whole reasonably exclude by their preponderating probative weight any other equally plausible explanation well founded in evidence. Whigham v. Metropolitan Life Ins., Co., 343 Pa. 149, 22 A. 2d 704; Sheinman & Sons, Inc., v. Scranton Life Ins. Co., D.C. 39 F. Supp. 398.

There are only two possible inferences to be drawn from the whole evidence. One favors the plaintiff, the other, the defendant. But on the whole record, it appears that the inference in favor of the plaintiff is stronger. In this state of the evidence, the case was peculiarly one for the jury. McCormack, et al., v. Illinois Commercial Men's Ass'n., 7 Cir. 159 F. 114; Stewart v. Travelers Protective Ass'n. of America, 5 Cir., 81 F. 2d. 25; New York Life Ins. Co. v. Roufos, 6 Cir. 83 F. 2d. 620; Allen v. Washington Nat. Ins. Co., 9 Wash. 2d 563, 115 P. 2d 685.

The deceased was a young man 31 years of age and 6 feet 2 inches in height. He was in apparent good health, aside from such condition as may have been induced by the colon infection. It can hardly be controverted that deceased came to his death as the result of a broken neck, fractured during the mad flight of the automobile after it left the highway and came to rest in the rock pit. It is answered by plaintiff that the fact that deceased's arm was seen to be "jerking and twitching" while he lay in his car in the rock pit can be just as easily attributed to reflex action arising out of his

injury, as being due to any other cause. We think that this is a plausible explanation.

On the other hand, there is some evidence that at the time assured was predisposed to epileptic seizures, or convulsions; although there is not one scintilla of evidence that at the time of the accident he was suffering from such an attack, or from any other infirmity, for that matter. On the other hand, there was evidence, both medical and lay, that he had partially, if not wholly, recovered from his ailment; at least to the extent that an attack did not bring on unconsciousness or convulsions. It is apparent, therefore, that the contention of the defendant rests solely upon speculation, conjecture, and surmise; while the contention of the plaintiff finds some logical support in the testimony.

As we have indicated, there are two elements of the cause of action to be proven before plaintiff can recover: (1) That death was solely by external, violent and accidental means, and (2) that it was not contributed to by disease, or bodily or mental infirmity.

If the testimony adduced by plaintiff was worthy of belief, it was sufficient to completely repel and outweigh any inference raised by defendant that death was contributed to by disease or bodily or mental infirmity. With this element of the case thus taken care of, only one other element was necessary to complete the case of the plaintiff; i. e., that death was by external, violent and accidental means.

The law is that where death by external and violent means is established a presumption is thereby created, or prima facie proof is thereby made, that death was likewise by accidental means. And unless there are some facts and circumstances shown which tend to establish the contrary, the one who has the burden of proving death by accidental means will be entitled to recover, without further proof. 1 C.J. 495; 29 Am. Jur. 1082. Certainly it cannot be gainsaid that the death of Jenkins was by external and violent means. All of the evidence points to this fact, and there is no proof to the contrary. In the absence of such counterbalancing proof, therefore, it cannot be said that plaintiff has not met the burden.

At the close of the plaintiff's case, in chief, the defendant made a motion for directed verdict. The denial of the motion is assigned as error. This question is close; but we think the trial judge decided it correctly, when he denied the motion. After the denial of the motion, the defendant put on its case, followed by rebuttal by the plaintiff. On rebuttal, the plaintiff not only adduced evidence to meet the issue raised by the defendant, but much other evidence that might properly have been adduced in her case in chief, in the first instance.

Under our system of jurisprudence, the matter of directing a verdict is a delicate one and should be cautiously exercised. Branford State Bank v. The Howell Co., 88 Fla. 493, 102 So. 649. A motion for directed verdict should never be granted, unless the evidence is such that under no view which the jury might lawfully take of it favorable to the adverse party, can a verdict be sustained. For the purpose of the motion, the movant admits not only the facts proven, but every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the facts. Crandall's Florida Common Law Practice, Sec. 208, p. 305.

The case was allowed to go to the jury under full and fair instructions given by the trial judge. The verdict was for the plaintiff. On the whole record we cannot say that the verdict and judgments results in a miscarriage of justice. C. 54.23 Florida Statutes 1941.

Certain other questions have been raised by appellant, but we find them to be without merit.

The judgment should be affirmed. It is so ordered.

BUFORD, C. J., BROWN and THOMAS, JJ., concur.