Florrie R. FOY, as Guardian of the Estate of Leta G. Knight, a minor, Plaintiff,

v.

THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, a corporation, Defendant.

Civ. 207.

United States District Court, N. D. Florida, Gainesville Division.

Jan. 19, 1955.

Scruggs & Carmichael, by W. N. Avera, Gainesville, Fla., for plaintiff.

Howell & Howell, Jacksonville, Fla., for defendant.

DE VANE, Chief Judge.

This case was tried to the court without a jury. The suit is to recover under the double indemnity provision of a life insurance policy. It is alleged in the complaint that the insured, Clayton M. Knight, father of the beneficiary, Leta G. Knight, a minor, died from bodily injuries affected solely through external, violent and accidental means. Defendant filed a plea denying this and the case went to trial on this issue.

The evidence discloses that the insured died on April 12, 1952 from drowning. Plaintiff claims the drowning was accidental. Defendant contends, without filing a plea to that effect, that the insured committed suicide by drowning.

On April 12, 1952 the insured was found dead and floating at the base of a seawall at Bayfront Park in Punta Gorda, Charlotte County, Florida, by two boys and Deputy Sheriff Atkinson. The body was discovered somewhere between seven and seven-thirty p. m. Subsequently Dr. Robert H. Shedd performed an autopsy upon the body of the insured at the request of the coroner's jury. He testified that the insured died from drowning. He also testified that there were multiple contusions on the exposed surface of the body, scalp, face and hands and there was a large contusion over the left eye. The large contusion over the left eye showed no evidence of swelling and Dr. Shedd testified that this was proof that death immediately followed the injury. Dr. Shedd further testified that defendant came to his death by *accidental* drowning and the death certificate so stated.

The evidence in the case discloses that the water at the base of the seawall was approximately three feet deep at the time the body was discovered. The evidence further discloses that the water is shallow for quite some distance from the seawall. In fact, there is no evidence that the water in that part of the Bay is deeper than near the seawall and Atkinson testified that at times a person could walk safely across the Bay.

On the question as to whether the drowning was accidental Dr. Shedd testified that, in his opinion, a person could not voluntarily drown himself in three feet of water by inhaling water as a voluntary act; that to drown himself in water of that depth it would be necessary that he not be conscious or in control of his faculties. No medical or other testimony was offered to refute this testimony of Dr. Shedd. Defendant did, however, introduce testimony indicating an intention on the part of the insured to commit suicide. Defendant first offered in evidence a note written by the insured to his wife on the day of his death and while this note did not state that the insured planned to commit suicide, there was enough in it to make it admissible in evidence for the purpose of removing the legal presumption against suicide, which is the law in Florida, until some proof is submitted on the issue.

The evidence at the trial also disclosed that on the bench near the seawall, where insured's body was found, was found his shoes, cap, wallet, wristwatch and cigarettes. The insured's wife testified that she and the insured visited that site very frequently and that it was a place where each of them liked to go and sit and watch the sun set.

Defendant also introduced evidence disclosing that at the time of insured's death he was not living at home with his wife, but at the Princess Hotel in Punta Gorda, Florida; that he had been there for two or three days and was drinking extensively. The evidence in the case further shows that the insured was a heavy drinker. The manager of the Princess Hotel testified that the insured had lived at the hotel on numerous occasions during the past five years. On one occasion for almost a year; on two or three other occasions for several months, and frequently for shorter periods of time when he was drinking excessively. The Hotel manager further testified that despite his excessive use of liquor the insured was always a "perfect

gentleman" in his conduct at the hotel; never showed any visible evidence of being intoxicated and seemed to have the capacity of carrying, with dignity and proper decorum, any quantity of intoxicating liquor.

Defendant also introduced evidence which shows that while insured and his wife had no domestic troubles of any consequence, that two children of the wife of the insured, who lived with them, disliked the insured and that it was because of their dislike for him that he had left home and gone to the hotel just prior to the accident leading to his death.

Defendant further introduced evidence proving that the insured was not in good financial condition at the time of his death and left obligations of approximately fifteen hundred dollars, which his wife testified she subsequently paid, herself.

The testimony of all witnesses in the case, who were acquainted with the insured, establishes, without conflict, that the insured was a heavy drinker, but that he was a man with a happy, friendly disposition toward everyone; that he never got into any trouble because of his drinking and no one testified to him evidencing any despondency because of his financial condition or because of the domestic troubles his stepchildren were causing. The insured had been married to Mrs. Knight for approximately two years at the time of his death and the evidence discloses that he had been a heavy drinker for a number of years prior to their marriage.

Dr. Shedd testified that at the time of the autopsy on the insured he took samples of the gastric contents of the intra-cardiac blood and pieces of tissue from the heart, lungs, kidneys, liver and spleen and that all these were sent to the State Board of Health laboratory for examination. The report of the laboratory tests evidenced a blood alcoholic content of 2.7 milligrams per cc. There was no toxic substance found other than ethyl alcohol. Dr. Shedd also testified that the alcoholic content of the blood was sufficient to render a person so drunk as to create a stuporous condition and to virtually lose control of his mental faculties and locomotion; that it frequently produces heavy breathing, sleeping and vomiting by turn and certain other symptoms not important here.

The evidence also discloses that the seawall, where the insured's body was found, is a little more than six feet high; that there are rocks scattered in the water along the seawall and that the seawall is made of concrete with a base extending further into the water than the wall itself. The large contusion on the head of the insured, just above the left eye, clearly indicates that the insured struck his head on something, either the seawall, itself, or on a rock near the base, and it was evidently this blow that rendered the insured unconscious and brought about his drowning.

Based upon the state of the record, the case is not without its difficulties, but the difficulties do not lie in the issue. They arise from the application of the law to the facts adduced in support of the issue. In fine, the case is one of those typical borderline cases in which the losing litigant is rarely convinced that the decision is justified, regardless how it falls.

From all the evidence in the case, this court is very definitely of the opinion that the evidence is insufficient to prove suicide and establishes a case of accidental drowning, brought about in some unknown and unexpressed manner.

All the Florida cases that have been brought to the attention of the court supports this conclusion.

See: Mutual Life Ins. Co. of New York v. Johnson, 122 Fla. 567, 166 So. 442; Gulf Life Ins. Co. v. Weatherbee, 126 Fla. 568, 172 So. 235; Mutual Life Ins. Co. of New York v. Bell, 147 Fla. 734, 3 So.2d 487; New York Life Ins. Co. v. Satcher, 152 Fla. 411, 12 So.2d 108.

See also: Franklin Life Ins. Co. v. Heitchew, 5 Cir., 146 F.2d 71; Travelers Ins. Co. v. Bell, 5 Cir., 188 F.2d 725.

The insurance policy contains no provision, with reference to defendant's liability where death occurred while insured was intoxicated. However, due to the evidence in the case, with reference to the alcoholic content of the blood of the insured at the time of his death, the court directed counsel for the respective parties to submit to it, authorities on the question as to whether the insurance company would be liable if the court should find that at the time of his death the insured was physically and mentally under the influence of alcohol to such an extent that his mental faculties were seriously impaired. Counsel for defendant has submitted authorities holding that an insurance company is relieved of liability in such cases. It relies chiefly upon cases involving provocative and foolish conduct on the part of insured. The leading cases relied upon by defendant are: Thompson v. Prudential Ins. Co., 84 Ga.App. 214, 66 S.E. 2d 119; Mullaney v. Prudential Ins. Co., 5 Cir., 125 F.2d 900; Kinavey v. Prudential Ins. Co., 149 Pa.Super. 568, 27 A.2d 286. Plaintiff has cited to the court Pilot Life Ins. Co. v. Ayers, 4 Cir., 163 F.2d 860.

▊ The court has given careful consideration to the cases cited by counsel for the respective parties and in this case is of the opinion that the decision of Circuit Judge Soper in Pilot Life Insurance Co. v. Ayers is the better ruling to follow. Without going into the excellent reasons set forth by Judge Soper in that case, the court finds and holds that the intoxicated condition of the insured at the time of his death does not relieve defendant from liability under its policy.

▊ Florrie R. Foy, who brought this suit as Guardian of the Estate of Leta G. Knight, a minor, is the maternal grandmother of the minor and she took out and paid all premiums on the insurance policy sued upon in this case. At the time the insurance policy was issued it was for the benefit of her daughter and in case of the death of her daughter, for the minor. At the time the insurance policy was issued, Mrs. Foy lived in Georgia and the policy was written by an agent of defendant residing in Georgia. The minor's mother died some years ago and upon her death Mrs. Foy moved to Florida and resides at Williston with the minor and has continuously resided at that point with the grandchild since the death of her mother. Beginning with the year 1950 and for every year since, Mrs. Foy has paid the premiums on this policy to a Florida agent of defendant. Defendant, however, contends that since this policy was written in Georgia that the Georgia law applies and that the Florida Statute, with reference to attorney's fees is not applicable in this case. The Supreme Court of Florida has held to the contrary and this decision is binding on the court here. See: Feller v. Equitable Life Assurance Society, Fla., 57 So.2d 581.

▊ By her complaint, plaintiff seeks to recover One Thousand Dollars attorney's fees and called a witness who testified that a reasonable attorney's fee in the case would be Twelve Hundred Dollars. Defendant offered no testimony in rebuttal, but called to the attention of the court the fact that the complaint sought only One Thousand Dollars for attorney's fees. The court finds and holds that the plaintiff is limited to this amount and an attorney's fee of One Thousand Dollars will be awarded plaintiff's counsel in this case.

A final judgment in conformity with this Memorandum Decision will be entered herein.