161 So.2d 19 (1964)
SOUTHERN LIFE AND HEALTH INSURANCE COMPANY, an Alabama corporation licensed to do business in the State of Florida, Appellant,
v.
Keith MEDLEY, Appellee.
Nos. 63-397, 63-469.
District Court of Appeal of Florida. Third District.
February 25, 1964.
*20 Dixon, DeJarnette, Bradford, Williams, McKay & Kimbrell and John W. Thornton, Miami, for appellant.
Gertler & Frank, Miami Beach, for appellee.
Before CARROLL, HORTON and HENDRY, JJ.
HENDRY, Judge.
Defendant appeals from a jury verdict of the Civil Court of Record returned in favor of plaintiff-appellee, and a post-judgment awarding of attorney's fees to appellee. These two appeals have been consolidated and will be disposed of in this opinion.
Appellee is the beneficiary of an insurance policy issued by appellant upon the life of Nadean Medley. This policy had a double indemnity provision for external, violent and accidental death, but provided for no liability in the event insured's death was self-inflicted.
Nadean Medley died on July 4, 1962 on U.S. # 1 between Perrine and Homestead, Florida about 11:00 P.M. when she "fell" from the moving automobile of Ernest Robinson. Appellant claimed that she jumped causing her own death, and appellee asserted she fell, thereby dying accidentally. Appellee instituted this action to recover the difference between the face amount of the policy, which was paid, and the double indemnity amount.
Ernest Robinson testified, in appellee's behalf, that he did not see Nadean Medley leave the car, he just "* * * felt the wind come out of the door. I know the door was open, so I looked. She was gone so I pulled to the side of the road and stopped." During cross-examination appellant sought to impeach this statement by showing that the witness had made a prior inconsistent statement to police officers, who investigated this event. Appellant sought to introduce the testimony of two police officers and the deposition of Ernest Robinson to establish that Robinson had said he saw her jump from the car. Appellee objected to this testimony and the trial court sustained the objection on the basis of § 317.17 *21 Fla. Stat., F.S.A.,[1] to the effect that the statements were privileged. Appellant admits that the statement was clearly within the statutory privilege, but claims error, in that the privilege was waived when appellee introduced into evidence a certified copy of the coroner's death certificate which stated that the deceased jumped from a moving automobile.
We can not agree with appellant's contention. The statements made by the witness were privileged, and this privilege was not waived, nor could this proffered testimony be permitted into evidence for impeachment purposes.[2] We agree with appellant that this privilege is capable of waiver, but we fail to find any evidence of the necessary acts that constitute waiver here. The direct examination of the witness Robinson, reveals no such act, and appellant admits that appellee's counsel made timely objection to prevent waiver during cross-examination. There is some question as to whether appellee's counsel could waive this privilege which inured to the witness, and not appellee.
The trial court committed error by permitting into evidence those portions of the death certificate that represented hearsay.[3] This situation is clearly controlled by the Kincaid case, note 3, supra, wherein the First District Court of Appeal outlined the applicable law:
"The prevailing rule in Florida and elsewhere is that the coroner's finding or verdict is not admissible in an insurance action on the issue of suicide. [Citations omitted]." 145 So.2d at 275.
The trial court should not have permitted the answers to questions 20a and 20b of the death certificate into evidence. When the legislature adopted § 382.35(6), Fla. Stat., F.S.A., they did not change any of the substantive provisions of the law of evidence, they merely made procedural changes. The coroner could not have testified that the death was "probably accident" nor to the fact that "deceased jumped out of a moving motor vehicle, during argument" because from the coroner such testimony would have been hearsay.[4] It necessarily follows that the same statement on a piece of paper in no way increases the statement's probative value. The statute provides that all the "facts" in the death certificate shall be prima facie evidence to the facts therein stated. The two statements of the coroner or the medical examiner on the death certificate did not constitute "facts", but unverified opinion which was not entitled to judicial consideration.
*22 It naturally follows that, inasmuch as it was error to allow these portions of the death certificate into evidence, it was also error to charge the jury that they were prima facie evidence of the cause of death.[5]
Further, the determination that these portions of the death certificate should have been excluded, disposes of appellant's argument that the privilege under § 317.17 Fla. Stat., F.S.A. was waived by introducing the certificate into evidence with this statement on it. The fact that the statement is inadmissible precludes the possibility of waiver by appellee.
In view of the fact that a new trial will be required, we will consider several other aspects of this case. The trial court incorrectly charged the jury in regard to the burden of proof required by each party.[6]
The burden of proof in a situation such as this seems confusing and at times, incapable of clear expression and presentation to a jury. A summary of the development of this area of the law seems in order.
The Florida Supreme Court considered the burden of proof in a suit on an insurance policy to recover the double indemnity provision of a life policy in Mutual Life Ins. Co. of New York v. Johnson, 122 Fla. 567, 166 So. 442, and stated:
"* * * [T]he burden was on respondent, plaintiff in the action, to prove that death resulted from accidental means. To invoke the presumption of law against suicide in support of this issue, some evidence must be introduced consistent with the hypothesis of death by accidental means. The presumption of law against suicide is rebuttable and gives way when the cause of death is known and when the physical facts and circumstances are wholly inconsistent with any theory or hypothesis of death by accidental means. It prevails when the cause of death is unknown." [Emphasis supplied.] 166 So. at 445.
This case would seem to affirm the instruction given by the trial judge in regard to the burden of proof, and in Gulf Life Ins. Co. v. Weathersbee, 126 Fla. 568, 172 So. 235, the court followed Johnson, supra, by stating:
"Presumption against suicide is not evidence, but controls the result when there is lack of competent evidence to show death by suicide and also controls in cases of death by unexplained violence if defendant relies on suicide and fails to go forward with proof thereof on that point." 172 So. at 237.
The Supreme Court next considered this problem in Police & Firemen's Ins. Ass'n v. Hines, 134 Fla. 298, 183 So. 831, wherein the court, citing Johnson as its support, upheld the following jury charge:
"The [c]ourt charges you that because the evidence establishes the fact that Johnie Needam Hines died from a self-inflicted pistol shot, you are not on that account to assume that the shot was intentionally self-inflicted. That is, you are not on that account to assume that the deceased was a suicide. Such is not the law. On the contrary, under the law there arises a presumption that a self-inflicted wound producing death was a result of an accident, rather than from a premeditated design to effect *23 one's death. But this presumption may be overcome or rebutted by proof satisfactory to the jury that the act causing death was in fact intentionally committed. Then the presumption of accident disappears." 183 So. at 833.
As of 1938, when the Hines case, supra, was decided the law seemed to be well-settled that a presumption against suicide would operate in favor of the plaintiff, and all that was necessary to entitle plaintiff to get to the jury would be a showing of death, plus some evidence of accident contributing thereto. The following year, however, the Supreme Court decided Anderson v. New York Life Ins. Co., 140 Fla. 198, 191 So. 307 wherein it stated:
"The plaintiff in error relies on Mutual Life Insurance Company of New York v. Johnson, 122 Fla. 567, 166 So. 442, for reversal. [Lower court had directed a verdict for defendant insurance company at the end of the plaintiff's case.] The burden was first on the plaintiff to prove that the deceased came to his death by accidental means, this being her reliance for recovery. The defense of suicide must overcome this proof and may not come into the picture if a prima facie case on the basis of accidental death is not made. The evidence has been examined and while we do not feel called on to review it, we see no theory on which it would support a verdict for double indemnity. A prima facie case not having been made on the ground claimed, but burden did not shift to the defendant to overcome that case with evidence on the defense of suicide." 191 So. at 308.
The facts of the Anderson case, supra, indicated that the deceased was found dead in a latrine at the back of his residence with a bullet through his head and his pistol by his feet. This case seemed to be directly in the face of Johnson, Weathersbee and Hines.
After the Anderson case, the Federal Court of Appeals for the 5th Circuit in Scales v. Prudential Ins. Co. of America, 109 F.2d 119 (5th Cir.1940), held the burden of proving accidental death, thereby precluding suicide, was on the plaintiff, and went on to say that this was the law of Florida and the federal courts, and the apparent conflict between the Johnson and Anderson cases was explained in Travelers' Ins. Co. v. Wilkes, 76 F.2d 701 (5th Cir.1935) wherein the court stated:
"The court correctly told the jury that the burden was upon the plaintiff to show that the death was directly and independently of all other causes the result of accidental means, and that the burden of establishing an accidental death was upon her and remained with her throughout the case. At the same time, more than once and against requested charges to the contrary and over exceptions taken, the jury were told that the defense of suicide was an affirmative defense and the burden of establishing it by a preponderance of the evidence was upon the defendant. The latter charge would be correct in a suit upon the usual life policy containing an exception of death by suicide, for then the plaintiff need prove only death; the insurer having to plead and prove the exception. But this policy promises payment not for death, but for death by accident. Suicide, at least when sane, is not accidental death. A plaintiff under this policy has the burden of proving an accidental death, thereby negativing suicide. The denial that the death was accidental was a sufficient plea. The additional plea that it was suicide, though more specific, really added no defensive merit. It was not the setting up of an exception from the policy but a denial that the death was of the sort insured against. The burden of proof remained on the plaintiff. [Citations omitted.] It is only after the evidence is in that the presumption against suicide may come into play to help the plaintiff to bear the burden. It does not regulate nor *24 change the burden of proof, but it is an evidentiary presumption which may aid a lack of evidence but cannot prevail against the evidence. Where the evidence makes it proper, a jury may be instructed how to use this presumption, but it ought not to be confused with the burden of proof under the pleadings. Appellate courts, in discussing the sufficiency of evidence to show accidental death, have sometimes spoken of the presumption as shifting the burden of proof, but such language is not accurate." 76 F.2d at 705.
The Florida law is as outlined by the Federal Court in the Wilkes and Scales cases, and even though the Supreme Court did not talk in these terms (distinguishing between the styles of insurance) when deciding Anderson and Johnson, subsequent cases as decided by Florida courts are in accord with the rules enunciated in Wilkes.[7]
Where the suit is pursuant to a life insurance policy and the issue of suicide is raised as a defense to the payment of the policy by the insurance company, the burden of going forward with the evidence to establish suicide is upon the insurance company. Where the suit is upon an accident policy or the double indemnity provisions of a life policy, the peril insured against is death resulting from accident, not as with a life policy where the peril is just death.[8]
In the life policy, the beneficiary must prove the death of the insured and the existence of the policy. Once having done this, the insurer bears the burden of establishing suicide. In an accident policy or the double indemnity provision of a life policy, the beneficiary has to establish not just death, but accidental death to come within the confines of the policy. Failing the establishment of accidental death, not just death, defendant is entitled to a directed verdict.
By the operation of logic, if the plaintiff is proving that death was caused accidentally, he must necessarily be refuting any claim that death was by suicide. The terms are mutually exclusive, and as a result the plaintiff is not put to any greater burden than would ordinarily accrue to him, that of establishing by a preponderance of the evidence that the death was accidental.
In the present situation, the charge as given to the jury did not conform to the existing law as outlined above. This does not mean that the court may not instruct the jury in the use and existence of the presumption in favor of accident and against suicide, if the evidence so warrants.
It was further error on the part of the trial court to fail to instruct that the plaintiff may have failed in her burden of proving accidental death if death resulted from an intentional act, not intended or expected to be attended with injurious results to the actor.[9] In other words, if the jury finds that the deceased did not intend to commit suicide, but intentionally jumped *25 from the car they must find for the defendant. Under those circumstances the death would not be accidental.
The judgment entered for additional attorneys' fees was not within the contemplation of § 627.0127, Fla. Stat., F.S.A.,[10] and is therefore reversed.
The judgments appealed from are reversed and the cause is remanded for new trial.
Reversed and remanded.
NOTES
[1] § 317.17 Fla. Stat., F.S.A.: "All accident reports made by persons involved in accidents shall be without prejudice to the individual so reporting and shall be for the confidential use of the department or other state agencies having use of the records for accident prevention purposes, except that the department may disclose the identity of a person involved in an accident when such identity is not otherwise known or when such person denies his presence at such accident. No such report shall be used as evidence in any trial, civil or criminal, arising out of an accident, except that the department shall furnish upon demand of any person who has, or claims to have, made such a report or, upon demand of any court, a certificate showing that a specified accident report has or has not been made to the department solely to prove a compliance or a failure to comply with the requirements that such a report be made to the department."
[2] Ippolito v. Brener, Fla. 1956, 89 So.2d 650. Appellant cites Hancock v. McDonald, Fla.App. 1963, 148 So.2d 56 in support of its contention that at least one of the police officers should have been permitted to testify. This case is distinguishable from the present situation, in that, the witness here was one of those persons within the contemplation of the statute, and it is his statements which are privileged regardless of when they are taken.
[3] Mutual Life Ins. Co. of New York v. Bell, 147 Fla. 734, 3 So.2d 487; World Insurance Company v. Kincaid, Fla.App. 1962, 145 So.2d 268.
[4] 31A C.J.S. Evidence §§ 192-200, and cases cited therein.
[5] The judge's charge was as follows: "You are further instructed that a death certificate and the finding of the Medical Examiner admitted in evidence are prima facie evidence as to cause of death, which prima facie evidence, of course, may be rebutted, but in the absence of such rebuttal are evidentiary and may be considered by you as evidence of the cause of death."
[6] The judge's charge was as follows: "You are instructed that the law of the State of Florida hold[s] that the burden of one attempting to establish suicide has to carry and sustain the burden of proof to establish suicide. In the absence of proof sufficient to carry the burden of proof above described, the defendant shall fail on proof of self-destruction."
[7] Gulf Life Insurance Company v. Nash, Fla. 1957, 97 So.2d 4; Metropolitan Life Ins. Co. v. Jenkins, 152 Fla. 486, 12 So.2d 374; Mutual Life Ins. Co. of New York v. Bell, supra; World Insurance Company v. Kincaid, supra.
[8] Jefferson Standard Life Ins. Co. v. Clemmer, 79 F.2d 724, 731 (4th Cir.1935): "The differences that have arisen as to which party bears the burden of persuasion in insurance cases, when the defense is based on suicide, have been caused in part by a failure to distinguish between cases in which the plaintiff sues on an accident insurance policy or the double indemnity clause of a life insurance policy, and cases in which the insurer in a life policy raises the defense of suicide. If death from any cause except suicide is insured against, the burden is on the company to prove the exception; but if death from one specific cause, such as accident, is insured against, the burden is on the policy holder to show that the condition precedent to liability has taken place. [Citations omitted.]"
[9] Gulf Life Insurance Company v. Nash, supra; Vance, Insurance (3d Ed. 1951) § 181.
[10] Metropolitan Life Ins. Co. v. Jenkins, 153 Fla. 53, 13 So.2d 610; Boston Insurance Company v. Smith, Fla.App. 1963, 149 So.2d 68. Whether defending a judgment in the lower court or on appeal subsequent to entry, attorney's fees are not recoverable pursuant to the statute.