PIERCE, Judge.
This is an appeal by appellant administra-trix, plaintiff below, from a final judgment ■entered pursuant to a directed verdict in favor of appellee insurance Company, defendant below, at the conclusion of plaintiffs case in a jury trial.
Louella P. Hill, administratrix of the ■estate of her deceased husband, Robert R. Hill, filed suit in the Polk County Circuit •Court against American Home Assurance ■Company, a corporation, to recover upon an insurance policy issued by the company up■on the life of said Robert R. Hill, payable upon his death by “accidental means”. Liability being denied by the Company, the -cause in due course came on for trial before a jury, and at the conclusion of plaintiffs case, the trial Judge was of the opinion that the evidence adduced by and on be"half of plaintiff administratrix failed to establish “by a preponderance of the evidence that Mr. Hill came to his death by • accidental means”, and hence directed a verdict for the defendant Company. From the judgment consequently entered, the ad-ministratrix appeals to this Court, raising •the sole question of whether or not the evidence so adduced was sufficient to make out • a prima facie case such as to preclude a ■ directed verdict for the Company as a -matter of law. Resolution of this question, of course, necessitates a review of the facts adduced by her in evidence.
Tragedy hit the family of Robert R. Hill • at his Polk County home on November 29, 1964. That morning, a “lazy Sunday” at •the rural Hill home, Mr. and Mrs. Hill • arose fairly early and, after feeding and watering the dozen or so calves they were raising on the premises, drank coffee for • awhile and then again retired. Sometime ■ thereafter Mr. Hill got up and went to the front of the house, Mrs. Hill remaining in bed. Their two daughters, 16 year old i Linda who lived with them, and 23 year old Diana married for four years to John Myrick, came to the house together and soon thereafter left. At one time in the forenoon, Mr. Hill went back to the bedroom and told his wife that the daughters were there, asked her if she wanted some cigarettes, and at her request brought some to her in the bedroom, then returning to the front part of the house. Mrs. Hill was thereafter dozing off again when she heard a noise in the other part of the building like “an ash tray had fallen off the table”, whereupon she got up and went to the living room where she found her husband lying dead on the floor with a rifle two or three feet away between the body and a coffee table. Horrified but touching nothing, Mrs. Hill first telephoned her family doctor and finding him not at home, called her married daughter’s home, and John who answered the phone immediately came over.
The weapon was a bolt action single shot Winchester rifle, and there was some evidence by a local gunsmith that a small tap on the striker when the gun was uncocked would fire the weapon, also that dropping the gun on the floor with the striker cocked would release the firing pin. Other possible theories were advanced compatible with an accidental firing.
On Friday, two days before his death, Mr. Hill met his son-in-law Myrick, who was a teacher at Bartow High School, at about 9 P.M. and with other friends drank a few sociable rounds of beer at several places and had conversation, returning home about 2 A.M. They talked casually about various subjects of mutual interest; about Myrick’s son Johnny, Mr. Hill’s grandson, of whom he was very proud; about Thanksgiving the week before at the Hill home; about the Hills and the Myricks having dinner together at the Hill home the following week; about the “good deal” that Mr. Hill had gotten on the car they were driving around in that night; and about a book that Mr. Hill asked Myrick to borrow for him from the school library entitled “Walden Pond” by author Thoreau. *641 All in all it was a most convivial, sociable good fellowship get-together evening of four or five hours. Nobody had too much to drink, nobody was depressed, nobody was unhappy; everybody and everything was cheerful and friendly.
When Myrick received the call from Mrs. Hill just after she discovered Mr. Hill’s body, he proceeded at once to the Hill home and found Mr. Hill lying on his back with his arms at his side in the small front room with tables on either side of him, one being a low coffee table. The .22 calibre rifle, with a recently fired empty shell in the chamber, was on the floor parallel to the left side of the body. There were powder burns around the wound, which was “slightly to the left chest center and * * * the heart seemed to have been punctured”. The ambulance people and the men from the Sheriff’s office were immediately summoned and came over. It was then just after 3 P.M. on Sunday afternoon. The room was “in good order” with no visible sign of a struggle or disarrangement of furnishings.
As to his habits, Mr. Hill was a meticulous person, more or less of a “perfectionist” in his work, a quiet type, more an introvert than an extrovert. He was a moderate, occasional drinker, but apparently no more concerned about his drinking than the average social drinker. He was not drinking on the Sunday of his death, nor the day before, and so far as known had had nothing to drink since the Friday night before with his son-in-law and friends. The Hills had been married for 24 years and had the two daughters, one of whom lived with them, the teenager. The family lived on a six acre tract near Medulla in Polk County in their five year old, three bedroom, $12,000 concrete block house.
Mr. Hill worked for International Minerals Corporation, had been there for about fifteen years, and earned from $7,000 to $8,000 a year. He had no financial problems. He had no marital or family difficulties. His health was generally good, although having had high blood pressure off and on “since he was in the Service”. Pie had no complaints about feeling badly or having any other troubles that weekend; had had no arguments, quarrels, or other upsetting distractions. Some two and a half months before his death he had been in a hospital for a day or two, but only for a physical check-up by the family physician, a Dr. Montgomery.
He was not at all a rabid hunter but occasionally shot rabbits with the rifle with which he was killed. He usually kept the gun standing in the dining room “by the buffet” and at other times in the bedroom closet. They had been raising cattle on their pasture land home premises for about a year past and according to Mrs. Hill “they were dairy cattle and what we wanted to do was breed them with beef stock in order to raise beef and then of course the bulls would have been used for meat”. The projected cattle raising was Mr. Hill’s “major interest outside of his work and his family”.
At the time of his death Mr. Hill had an accidental death insurance policy on his life, payable to his estate, which he had taken out some fifteen months before. The accidental death benefit payable under the policy, at the time of the death, amounted to $2,794.20. Upon refusal of the Company to pay the accidental death claim under the policy, the widow, as administratrix of her husband’s estate, sued the company. The insurance company, although admitting that said policy was in full force and effect at the time of death, denied liability thereunder for the asserted reason that the insured’s death was not “by accidental means”, and that he “did not die as a result of an accident as defined in the policy terms”, but that on the contrary Mr. Hill “did intentionally take his own life by deliberately shooting himself * * * and his sudden death * * * was accomplished by * * * suicide”.
So the sole issue made by the pleadings was whether or not Mr. Hill’s death was an *642 accident or whether it was suicide, and it was upon this issue that the cause in due course came on to be tried before a jury, resulting in testimony being adduced by and on behalf of the administratrix establishing in substance the facts hereinbefore narrated. Upon such facts being adduced, the trial court directed a verdict for the Company at the conclusion of the adminis-tratrix’s case. From the judgment of dismissal accordingly entered, the administra-trix has appealed to this Court and has raised as the sole point here the sufficiency of such evidence to make out at least a prima facie case of accidental death sufficient to withstand a directed verdict. We hold the point to be well taken and that the trial Court erred in taking the case away from the jury, especially at that point in the trial.
The appellant administratrix frankly concedes here that the evidence was not sufficient alone to negative suicide, but does contend that such evidence, with the aid of the legal presumption to which she says she was entitled in the light of such evidence, was sufficient to prima facie show accidental death. The rule in this jurisdiction seems to be that where “some” substantial, competent evidence is introduced consistent with the theory of accidental death, a presumption of law arises that it was not suicide.
The case law in Florida upon the question stems from Mutual Life Insurance Company of New York v. Johnson, 1936, 122 Fla. 567, 166 So. 442. In Johnson, the Supreme Court of Florida said (text 166 So. 444):
“Respondent was the beneficiary in an accident policy of insurance executed by petitioner in favor of her husband, James R. Johnson. The policy provided ‘double indemnity’ to the beneficiary, upon proof that the death of assured was caused by external, violent, and accidental means independently and exclusively of other causes. Johnson was killed October 17, 1932. The face of the policy was paid promptly, but double indemnity was refused on the contended ground that assured did not come to his death by accidental means.
A common-law action was brought by the beneficiary to recover under the double indemnity provision. The declaration relied on and alleged death by accidental means. Pleas denied that the assured came to his death by accidental means and asserted that it was produced by self-destruction. Such was the clear issue presented at the trial.
With the issue thus drawn, the burden was on respondent, plaintiff in the action, to prove that death resulted from accidental means. To invoke the presumption of law against suicide in support of this issue, some evidence must be introduced consistent with the hypothesis of death by accidental means. The presumption of law ■against suicide is re-buttable and gives way when the cause of death is known and when the physical facts and circumstances are wholly inconsistent with any theory or hypothesis of death by accidental means. It prevails when the cause of death is unknown.” (Emphasis supplied.)
Succeeding Florida cases which follow the rationale of Johnson are Gulf Life Ins. Co. v. Weathersbee, 1936, 126 Fla. 568, 172 So. 235; Police & Firemen’s Ins. Ass’n v. Hines, 1938, 134 Fla. 298, 183 So. 831; New York Life Ins. Co. v. Satcher, 1943, 152 Fla. 411, 12 So.2d 108; Metropolitan Life Ins. Co. v. Jenkins, 1943, 152 Fla. 486, 12 So.2d 374. To these may be added Jefferson Standard Life Ins. Co. v. Clemmer, 4 Cir., 79 F.2d 724, 103 A.L.R. 171, which Mr. Justice Terrell in the Satcher case called “[t]he best reasoned case on this point we have found”.
Weathersbee was a case involving a life policy providing double indemnity for accidental death, and from a judgment en *643 tered upon a directed verdict for the beneficiaries, the insurance company appealed. On the point of requisite proof to make out a case, the Supreme Court held (text 172 So. 237):
“The question of whether or not the evidence was sufficient to establish accidental death was essentially a jury question and ordinarily an instructed verdict thereon zvould be reversed. In determining whether one committed suicide or died by accidental means, courts are not bound by preponderance of evidence rule or rule requiring material facts to be proven beyond a reasonable doubt as in criminal cases, but may be guided by circumstantial as well as direct evidence. Accidental death need not be proven by eyewitnesses but may be de-dtccible from physical and other facts proven. Mutual Life Ins. Co. of New York v. Johnson, 122 Fla. 567, 166 So. 442.
Presumption against suicide is not evidence, but controls the res%ilt when there is lack of competent evidence to show death by suicide and also controls in cases of death by unexplained violence if defendant relies on suicide and fails to go forward with proof thereof on that point.1’ (Emphasis supplied.)
Hines was a certiorari proceeding for review of a judgment of the Circuit Court affirming a judgment rendered by a Civil Court of Record in favor of a widow in a suit brought by her to recover on an accidental death insurance policy issued on the life of her husband. In denying certiorari the Supreme Court upheld the following portions of the trial Judge’s charge to the jury, pertinent to the point here involved (text 183 So. S33):
“ '* * * The court instructs the jury that the law presumes that death was the result of an accident when nothing more is shown than that death was caused by a violent and external injury, and the character of the injury is consistent with the theory of accident. If the jury find from the evidence that Johnie Hines met his death from gunshot, and that the circumstances surrounding his death axe consistent with a theory of it having been accidental, then your verdict must be for the Plaintiff.’
* * * * # *
The Court charges you that because the evidence establishes the fact that Johnie Needam Hines died from a self-inflicted pistol shot, you are not on that account to assume that the shot was intentionally self-inflicted. That is, you are not on that account to assume that the deceased was a suicide. Such is not the law. On the contrary, under the law there arises a presumption that a self-inflicted zvound producing death zvas the result of an accident, rather than from a premeditated design to effect one’s death. But this presumption may be overcome or rebutted by proof satisfactory to the jury that the act causing death was in fact intentionally committed. Then the presumption of accident disappears.” (Emphasis supplied.)
Satcher was a case involving a similar double indemnity policy and from a jury verdict and judgment for the beneficiary, the insurance Company appealed. In the course of the opinion, the Supreme Court held (text 12 So.2d 108):
“The better reasoned view'approves the doctrine that the presumption against suicide is not evidence but is a rule of law zvhich in the event of an unexplained death by violence requires the conclusion that the death was not self imposed until credible evidence of suicide is offered. When such evidence is offered, the presumption vanishes and the court or the jury is at liberty to pass on the issues in the usual manner.” (Emphasis supplied.)
Jenkins was another accidental death policy case and the Supreme Court, in af *644 firming a judgment for the beneficiaries, said in part as follows (text 12 So.2d 378):
“The law is that where death by external and violent means is established a presumption is thereby created, or prima facie proof is thereby made, that death was likewise by accidental means. And unless there are some facts and circumstances shown which tend to establish the contrary, the one who has the burden of proving death by accidental means will be entitled to recover, without further proof. 1 C.J. 495; 29 Am.Jur. 1082.” (Emphasis supplied.)
In the Jenkins case, the defendant insurer moved for a directed verdict at the conclusion of plaintiff’s case, which motion was denied by the trial Court. In refusing to hold the trial Court in error, the Supreme Court said:
“Under our system of jurisprudence, the matter of directing a verdict is a delicate one and should be cautiously exercised. Branford State Bank v. Howell Co., 88 Fla. 493, 102 So. 649. A motion for directed verdict should never be granted, unless the evidence is such that under no view which the jury might lawfully take of it favorable to the adverse party, can a verdict be sustained. For the purpose of the motion, the movant admits not only the facts proven, but every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the facts. Crandall’s Florida Common Law Practice, § 208, p. 305.” (Emphasis supplied.)
The last quoted language in the Jenkins case is significant here because the trial Court in the case sub judice granted the motion for directed verdict made by the insurance Company at the conclusion of the beneficiary’s case, without even requiring any proof to be adduced by the Company.
In Clemmer, the case commended by Justice Terrell as aforesaid, the U. S. Court of Appeals for the Fourth Circuit, held in headnotes 1 and 2 as follows :
“1. The presumption against suicide is not evidence in an action on a life insurance policy, but is a rule of law which requires the conclusion, in the event of an unexplained death by violence, that the death was not suicidal until credible evidence of self-destruction is offered, upon the production of which the presumption disappears and the trier of facts passes upon the issues in the usual way.
2. Ordinarily, in an action on a life or accident insurance policy, it is not necessary to refer in the charge to the jury to the presumption against suicide, since, if the basic fact of death by violence is admitted or proved, the presumption arises, and, in the absence of evidence to the contrary, the judge should direct a verdict for the plaintiff, while if such evidence is produced the judge should charge the jury in the usual manner, although he may refer to the improbability of suicide as an inference of fact based on common experience, the jury being permitted, however, to give the inference such weight as it deems best, undisturbed by any artificial probative force.”
In Anderson v. New York Life Ins. Co., 1939, 140 Fla. 198, 191 So. 307, suit was brought to recover double indemnity on a life policy for accidental death. The trial Court instructed a verdict for the defendant insurer where the evidence for the beneficiary showed that “[t]he insured was found dead in a latrine at the back of his residence with a bullet through his head and his pistol by his feet” (text 191 So. 307-308). The Supreme Court, upon an appeal by the beneficiary, affirmed the lower Court, holding as follows: (text 191 So. 308)
“The plaintiff in error relies on Mutual Life Insurance Company of New York v. Johnson, 122 Fla. 567, 166 So. 442, for reversal. The burden was first on the *645 plaintiff to prove that the deceased came to his death by accidental means, this being her reliance for recovery. The defense of suicide must overcome this proof and may not come into the picture if a prima facie case on the basis of accidental death is not made. The evidence has been examined and while we do not feel called on to review it, we see no theory on which it would support a verdict for double indemnity. A prima facie case not having been made on the ground claimed, the burden did not shift to the defendant to overcome that case with evidence on the defense of suicide.” (Emphasis supplied.)
Appellee in the instant case argues that the Supreme Court in the Anderson case, in the language above quoted, meant to retract what it had previously said in the Johnson, Weathersbee and other cases, supra, or at least to lay down a somewhat modified rule as to presumption. The 3rd District Court in Southern Life & Health Insurance Company v. Medley, Fla.App.1964, 161 So.2d 19, also seemed inclined to the same conclusion, commenting that the Anderson case “seemed to be directly in the face of Johnson, Weathersbee and Hines” (text 161 So.2d 23). And the 1st District Court, in World Insurance Company v. Kincaid, Fla.App.1962, 145 So.2d 268, also seemed shaken by Anderson.
We do not so interpret the Anderson opinion. We do not think the Supreme Court in Anderson meant to in any way depart from the legal principle as to presumption laid down in the earlier cases. In our view, the law remains the same; the facts in Anderson were just different. Both the Supreme Court and the lower Court in Anderson felt that the facts relied upon by the beneficiary were simply not consistent with any reasonable hypothesis or theory of accidental death, but on the contrary pointed unerringly to suicide. Such seems to be patent from the hereinbefore quotation from Anderson. In fact, the Supreme Court in the original Johnson opinion said practically the same thing in the language: “[t]he presumption of law against suicide * * * gives way * * * when the physical facts and circumstances are wholly inconsistent with any theory or hypothesis of death by accidental means” (text 166 So. 445).
Mr. Justice Terrell, who wrote the previous opinions in Johnson and Weathers-bee, concurred in Anderson, which was a short per curiam. Furthermore, the opinions in Satcher and Jenkins, supra, were rendered four years after the opinion in Anderson, and one of these, the Satcher opinion, was again written by Justice Terrell. The rationale of the 3rd and 1st District Courts in the Southern Life case and World Insurance case is, as we see it, that the facts in those cases came within the factual orbit of Anderson, but that the overall law on the general subject of the presumption remains the same, as laid down ■in Johnson, when the facts permit it. This seems implicit in the following language of the 3rd District Court in Southern Life (text 161 So.2d 24):
“This does not mean that the court may not instruct the jury in the use and existence of the presumption in favor of accident and against suicide, if the evidence so warrants(Emphasis supplied.)
Appellee Company also cites the 5th U. S. Court of Appeals cases of Scales v. Prudential Insurance Company of America, (5 CA 1940) 109 F.2d 119, and Travelers Insurance Company v. Wilkes, (5 CA 1935) 76 F.2d 701. But these cases are likewise, for the same reasons, not in disharmony with the cases first cited, from Johnson through Clemmer.
Compare also the cases of Mutual Life Ins. Co. v. Garner, (5 CA 1935) 75 F.2d 384, and Walker v. Prudential Ins. Co. of America, (5 CA 1942) 127 F.2d 938. These together with Scales were all appeals in Federal cases from Florida involving suits on accidental death policies and necessarily controlled by Florida law. District Judge *646 Alexander Akerman was the trial Judge in each case. In Scales a directed verdict for the insurance Company was affirmed upon authority of Anderson. In Walker a directed verdict for the Company was reversed upon authority of Johnson. In Garner a jury verdict for the beneficiary was upheld under the reasoning of Johnson.
The general rule is well stated in 21 Appleman on Insurance Law and Practice, § 12145, page 77, et seq. as follows:
“Death is presumed to be the result of natural dissolution rather than of accidental injury. A beneficiary suing for death benefits under an accident policy, or double indemnity feature of a life policy, has the burden of proving accidental death, or death resulting exclusively from external, violent, and accidental means, where such is the policy requirement. Or, it has otherwise been stated, the plaintiff has the burden of making a prima facie case of accidental death. The plaintiff is required to sustain such burden by a preponderance of the evidence, but this does not require proof beyond a reasonable doubt. And such proof can be established by circumstantial evidence.
The plaintiff or beneficiary must prove also that death resulted from injuries of a kind against which the policy insured, or that the cause of death was one covered by the contract. However, if it is shown that death is a result of external violence, there is a presumption that the violence was due to accidental means, so as to support a recovery in the 'absence of affirmative proof to the contrary by the insurer." (Emphasis supplied.)
The power of a trial Court in directing a verdict should be cautiously exercised. Cameron & Barkley Co. v. Law-Engle Co., 1929, 98 Fla. 920, 124 So. 814; Duval Laundry Co. v. Reif, 1938, 130 Fla. 276, 177 So. 726. It is only in the absence of all evidence against a defendant that the Court should direct a verdict in his favor. Florida Cent. & P. R. Co. v. Williams, 1896, 37 Fla. 406, 20 So. 558. It is reversible error to direct a verdict for the defendant in a case where there is some substantial evidence tending to prove the issue for the plaintiff. Ball v. Peterson-McNeill Co., 1917, 73 Fla. 239, 74 So. 216; Cason v. Florida Power Co., 1917, 74 Fla. 1, 76 So. 535, L.R.A.1918A, 1034. Courts should be reluctant to grant a directed verdict where the evidence adduced is reasonably susceptible of supporting the issue or issues presented. Alessi v. Farcas, Fla.App. 1960, 118 So.2d 658.
Trial by jury is a constitutionally protected right, and litigants should be accorded the full measure of that right if there is any substantial, competent evidence, coupled with all reasonable inferences to be drawn therefrom, tending to sustain the issue sought to be advanced. See, for analogy, the recent opinion of the Supreme Court in Holl etc. v. Talcott, Fla., 191 So.2d 40, filed October 10, 1966.
In our opinion, the appellant ad-ministratrix adduced sufficient evidence to make out a case, at least prima facie, upon which an issue of accidental death could be framed. It is our further view that, inasmuch as the case will have to be retried, it would serve no good purpose, and in fact would be inappropriate, for us to comment upon any phase or details of the evidence other than what we have already done in this opinion, which was necessary to provide the basis for this Court’s decision.
The judgment appealed from is thereupon reversed for a new trial in accordance herewith.
Reversed and remanded.
HOBSON, Acting C. J., and LEAVEN-GOOD, C. RICHARD, Associate Judge, concur.